MATTOX *v.* STATE.

No. 41709          March 20, 1961          128 So. 2d 368

*Barnett, Montgomery, McClintock & Cunningham,* Jackson; *W. L. Sims,* Columbus; *Jesse Stennis,* Macon, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

JONES, J.

This is an appeal from the Circuit Court of Lowndes County. The charge was murder, the verdict guilty, the sentence life. The appellant was a young man approximately 19 years of age. The deceased was a young matron, the mother of four children. They were next door neighbors on a quiet residential street in the college town of Columbus, Mississippi. The appellant was attending Mississippi State University at Starkville, commuting.

In view of the disposition of the case, it is unnecessary to go into a detailed statement of the facts. The case was one of circumstantial evidence. The deceased was found on Sunday morning, January 31, 1960, on the floor of her garage, a coat hanger and a scarf twisted around her neck to the extent that her neck was constricted two inches according to the doctor's testimony. Her clothes were not in disarray, and there was no evidence of larceny, robbery, or attempted rape. The evidence justified the jury in finding that appellant was present in or around his home, which was located about six feet from the garage where deceased was found, during the time deceased was murdered, and that he had the opportunity to commit the crime at a time when deceased was alone in her home. The evidence, in our opinion, was sufficient to go to the jury on the theory that the defendant was the guilty party, having as a prompting

force behind his act the victim's termination of an affair that had existed for sometime. A shirt shown to have been the shirt of the defendant and which the jury might have inferred was worn by him on the morning of the occurrence was introduced in evidence. A laboratory expert from the FBI testified that the fibers from this shirt were "in every microscopic detail" similar to fibers found on the clothes worn by the deceased at the time of her death. Miss Sara Grayson, student at Mississippi State University, testified in detail that appellant, over a period of time, told her of an involved affair with someone whom the jury could have found was the deceased, of his frustrations because deceased had discontinued it, and of threats to kill her, including the method and means actually employed by the perpetrator of the crime. This testimony, it is argued, was inadmissible, but we think it was. Sandifer v. State, 192 So. 342; Wharton's Criminal Evidence, 12th Ed., Vol. 1, Secs. 192, 193, 194 and 195. This is a brief outline of the facts upon which the jury found the defendant guilty. It is sufficient to say that the State made a rather strong case against appellant, although circumstantial.

■■■ Complaint is made of several of the instructions given in the case because they omit the necessity of the State proving the guilt of the defendant "to the exclusion of every other reasonable hypothesis." Several of the instructions did omit such requirement; however, we find no error here because such omission was included in several other instructions requested by each side.

■■■ The court also granted to the State an instruction on the presumption of innocence that is almost word for word a copy of the instruction quoted in Smith v. State, 161 Miss. 430, 137 So. 96. In this case, Judge Anderson said of this instruction: "A careful analysis of this instruction, we think, shows that it embodies correct legal principles. Nevertheless, it is so adroitly drawn as to go very near the border line. The lay mind, in read-

ing it, might get the idea that the jury, in making up their verdict, were not to take into consideration the burden of proof and the presumption of innocence. At first glance, the instruction is calculated to convey that impression. We cannot say it was error for the court to give this instruction, but we think that on another trial it should be left out of the case. The instruction is too illusive for the ordinary juror to get hold of and understand its meaning; it is too smart.''

The same instruction was involved in McLaurin v. State, 205 Miss. 554, 37 So. 2d 8. In that case, after the instruction had been given by the trial judge, when he heard it read to the jury he was doubtful of it and then withdrew it, and the jurors did not have it before them in their deliberations. The instruction was again before the Court in Williams v. State, 14 So. 2d 216, and the Court refused to reverse on it. In the instant case we would not reverse on that instruction alone, but prosecuting attorneys should not use this instruction for the reasons stated in the Smith case, supra.

The State also obtained the following instruction: ''The Court instructs the jury for the State, as a matter of law, that the defendant has put in evidence his general reputation for peaceableness; that such evidence is permissible under the law and is to be considered by the jury as a circumstance in this case. But the Court further instructs the jury, that if, from all the evidence in this case, you are satisfied beyond all reasonable doubt and to the exclusion of every other reasonable hypothesis, of the guilt of the accused, then it is your duty to find him guilty, notwithstanding the fact that heretofore the accused may have borne a very good character for peaceableness.''

Instructions on general reputation or character of the accused are said to be both argumentative and a comment upon the weight of the testimony. Mississippi Jury Instructions, Alexander, Sec. 1461, p. 350. They were

also condemned in Coleman v. State, 59 Miss. 484, Calloway v. State, 155 Miss. 706, 125 So. 109, and other cases. The Court would not reverse on either one of the above instructions taken alone but they should not be used on another trial. The next question requires that the case be reversed and remanded for another trial.

Miss Sara Grayson was the key witness for the State. On cross-examination by one of the defense attorneys, and not in direct response to a question propounded by the attorney for defense, she volunteered: "After that, sir, they carried me to Birmingham, the 24th, and . . ." At this point, defense objected and moved that the testimony be developed in the absence of the jury. The jury was permitted to retire and in the absence of the jury, the following answer of the witness appears: "On April 24 I went to the Police Department in Birmingham at 1 o'clock and from 1 o'clock until 6:30 they gave me a lie detector test." Objection was made by attorney for the defense on the ground that this statement, as well as the statement in the presence of the jury, was not responsive to any question propounded by him. This objection was overruled, and the witness then said: "Captain Evans and Sergeant Harris administered this test to me from 1 to 6:30. They asked me specific questions of questions that I have told today. I think you can probably obtain the results of the test from the police department." At this point, counsel for defense objected to any testimony about any alleged lie detector test given this witness for the reason that it was inadmissible. The trial court held that it was not the test but the result of the test that the Supreme Court had passed on; that the fact the test was made could be shown but the result could not be shown. Attorney for defendant then objected to her testifying that she had taken a lie detector test. This objection was overruled.

After the jury returned, counsel for the State examined Miss Grayson in redirect examination, in which the following occurred:

"Q. All right, don't say what they say. What did you do then?

"A. The next day I went to Birmingham, left for Birmingham where I underwent a lie detector test.

"Q. Who went with you to Birmingham?

"MR. STENNIS: We object to that, if your Honor please, and move that since we have proof that such evidence is incompetent, we move that it be developed and the Court pass on its admissibility in the absence of the jury.

"MR. BURGIN: May it please the Court, you passed, the Court has passed on it once.

"THE COURT: Well, that's true. I let the jury go out Saturday and it was never developed any further than just where we have gone now and I believe the request was made by the attorney for the defendant at that time. All right, proceed.

"MR. STENNIS: Your Honor's ruling on that?

"THE COURT: Overruled.

"MR. STENNIS: Yes, sir.

"A. On, on, on this day on Saturday we met Louis Harper at ten o'clock and went to Birmingham. I spent Saturday night with my aunt in Birmingham, and Sunday at 1:00 o'clock we went to the Police Station where from 1:00 to 6:30 I was given a lie detector test on all the things that I have made, said in my statement.

"MR. STENNIS: Now we object, if your Honor please, on the ground that the Supreme Court has held that lie detector tests are so unreliable and depend to such a high degree on the personal interpretation of the person administering such test that they have never been admitted into any court, any superior court, or approved by any superior court in the entire United States.

"THE COURT: Well this was made, the Court will pass on those. Overruled.

"MR. STENNIS: Now we object further unless it is shown that the man who gave the lie detector test was skilled and unless it is shown what type of lie detector test was given, that he was skilled and that he was trained and that this thing was absolutely accurate.

"THE COURT: I think that is perhaps proper and the Court will sustain that objection. Anything further, Mr. Burgin?

"BY MR. BURGIN:

"Q. You say that you underwent a lie detector test?

"MR. STENNIS: We renew our objection.

"THE COURT: Overruled.

"A. Yes, sir, I did, from 1:00 o'clock until 6:30 I was, I was at the Police Station where I underwent a test.

"Q. I see, I believe that is all."

The question of lie detector tests was before this Court in the case of Hawkins v. State, 222 Miss. 753, 77 So. 2d 263. In that case the appellant offered a private investigator to testify as to the result of a lie detector test. This Court held that the lower court committed no error in refusing to admit in evidence the results of this test. In Pittman v. State, 236 Miss. 592, 111 So. 2d 415, it was shown that the deputy sheriff had carried the defendant and another to Jackson to take a lie detector test. This Court held under the facts in that case there was no error, being of the opinion that the statement that they had gone to Jackson to take a lie test could not have prejudiced the appellant there. Also there was no evidence that a test was made—consequently, no inference that he had failed it.

It is probable that the lower court and the prosecuting attorney conceived from these two cases that it was proper to show that a test was made provided the result was not shown, but the instant case is a far different one. It seems that no Supreme Court of any State, as far as we can find, has permitted introduction of proof of the re-

sult of any lie detector test. Anno., 23 A.L.R. 2d page 1308. Cases cited in the annotation are from California, District of Columbia, Kansas, Missouri, Nebraska, North Dakota, Oklahoma, and Wisconsin. The only case we have been able to find directly in point and on the question as to the admissibility of the fact that a test was taken is the case of Kaminski v. State, 63 So. 2d 339, a Florida case, in which the Court, on rehearing, reversed a judgment which it had formerly affirmed. In that case the State's witness, after vigorous cross-examination by the defense, was later recalled by the State and asked if he had consented to taking a lie detector test while being examined and was also asked whether he took such a test, and he answered that he did. The result of the test was not shown. The defendant assigned as grounds for reversal the action of the trial court in allowing the prosecuting witness to testify that he had submitted to a lie detector test. We quote in detail from that opinion.

''We find, without a single exception, that every court of last resort that has been called upon to decide the question has ruled that results obtained from the so-called lie detector test are not admissible as evidence. As the matter is stated in one of the earliest reported cases on the subject: 'We think the systolic blood pressure deception test has not yet gained such standing and scientific recognition among physiological and psychological authorities as would justify the courts in admitting expert testimony deduced from the discovery, development, and experiments thus far made.' Frye v. United States, 54 App. D.C. 46, 293 F. 1013, 1014, 34 A.L.R. 145. For other cases on the point see also People v. Forte, 279 N. Y. 204, 18 N. E. 2d 31, 119 A.L.R. 1198; State v. Cole, 354 Mo. 181, 188 S. W. 2d 43, 189 S. W. 2d 541; Henderson v. State, Okl. Cr. App., 230 P. 2d 495, 23 A.L.R. 2d 1292; People v. Wochnick, 98 Cal. App. 2d 124, 219 P. 2d 70; State v. Lowry, 163 Kan. 622, 185 P. 2d 147; State v. Pusch, 77 N. D. 860, 46 N. W. 2d 508; Boeche v. State,

151 Neb. 368, 37 N. W. 2d 593; Le Fevre v. State, 242 Wis. 416, 8 N. W. 2d 288; People v. Becker, 300 Mich. 562, 2 N. W. 2d 503, 139 A.L.R. 1171. See also Wigmore on Evidence, 3rd Ed., Vol. III, Sec. 999, Note 2; and 20 Am. Jur. 633.

"The Attorney General does not deny that the rule in respect to admissions is as has been stated. He contends, however, that none of the decisions relied on by the appellants are relevant to the case at bar, for the reason that they involve the question of the admissibility or inadmissibility of results from lie detection tests, and not the question whether testimony as to the taking of a lie detector test is admissible for the purpose of rehabilitating a witness. As he states the matter in his brief, 'Actually, what the appellant is complaining of here is the fact that after his counsel had drawn out on cross-examination certain facts, and in a manner so as to insinuate by inferences, and otherwise, in the minds of the jury that the complaining witness was not truthful and hence not worthy of belief, the trial court, over appellant's objection, permitted the prosecutor on redirect examination to ask the complaining witness if he had submitted to a lie detector test during the investigation of the alleged crime, in order to allow the prosecutor an opportunity to rehabilitate the credibility of his witness.'

"We agree with the Attorney General that the prosecutor must have offered the evidence for the purpose stated; indeed, there could have been no other purpose for submitting it—and that is precisely the reason the defendants are complaining about it.

"We agree with their position. When the trial judge allowed the evidence to be admitted, and sanctioned the submission by the statement he made, we are of the view that he committed as egregious an error as if he had admitted the results of the test to have been received in evidence over objection. For there can be no doubt that in initiating the inquiry the prosecutor intended to leave

in the minds of the jurors the impression that because the witness Newbold had voluntarily submitted to a lie detector test prior to the time of trial he was a man of veracity and hence was telling the truth from the witness stand, no matter how inconsistent his tale might appear to be to the jurors when compared with the testimony offered by other State witnesses.

''Can it logically be argued that the putting of the questions and the allowance of the answers under the circumstances prevailing at the trial did not have a direct and profound tendency to influence or prejudice the minds of the jurors against the defendants? Can anything be clearer than that when defense counsel failed to cross-examine the witness as to the results of the test, after the court had announced that that course would be open to him in respect to 'what the test was on,' an impression must have been implanted in the minds of the jurors that the result of the lie detector test had been unfavorable to the cause of defendants or else the inquiry would have been made?

''It was not fair to place the defendants in the entrapped position that required them at their peril either to pursue the inquiry as to the nature of the results of the test or to be damned by the adverse impressions which naturally would be expected to flow from their failure to do so. The practical effect of the admission of the testimony, as fortified by the remarks of the trial judge when he overruled the objection, was to allow, by inference, the admission of damaging evidence that would not have been legally admissible had it been submitted directly. In a situation where the State's whole case depended entirely upon the testimony of a witness whose credibility appears to have been seriously shaken not only by cross-examination but by evidence given by other State's witnesses as well, the defendants should not have been placed in this intolerable position.

"Whatever the guilt or innocence of the defendants may ultimately prove to be, there can be no escape from the fact that at the trial they were entitled to the presumption of innocence with which the law clothes all persons accused of crime until proven guilty beyond a reasonable doubt by legally competent evidence. The successful attempt by the prosecution by the means employed to implant in the minds of the jury the impression that because the witness had voluntarily submitted to a lie detector test prior to trial he must perforce be testifying truthfully in the course of the trial, resulted, in effect, in the substitution of a mechanical device, without fair opportunity for cross-examination, for the time-tested, time-tried, and time-honored discretion of the judgment of a jury as to matters of credibility.

"For the reasons stated, we are of the view that we should recede from the former opinion of this Court affirming the judgment and that the judgment appealed from should be reversed and a new trial awarded."

In this case, as in the Florida case, it seems certain that this testimony before the jury as developed by the prosecuting attorney over the objection of defense was equivalent under the circumstances to telling the jury the result of the lie detector test; and that she passed same with "flying colors"; that same was to bolster the testimony of the prosecuting witness, and was very prejudicial to the defendant. This error is most significant in the present case because the witness whose testimony was bolstered by the evidence concerning the lie detector test was the principal witness on which the jury verdict was based. Moreover, the said error takes on added significance because the State's case was based entirely on circumstantial evidence. We, therefore, hold that neither the taking of a lie detector test nor the result thereof should be admitted in evidence.

Complaint is made that State's witnesses refused to talk to counsel for defense prior to being placed

upon the stand and it is claimed that Section 2294, Mississippi Code of 1942, is violated by the refusal of a witness to talk to the attorney for the defense. On this question we stand on the opinion of Judge Griffith in Bryant v. State, 172 Miss. 210, 157 So. 346, and hold that one to whom a witness has refused to talk has the right to fully cross-examine such witness when placed on the stand.

Appellant makes a strong argument to the effect that certain remarks made by the trial judge during the course of the trial were prejudicial, and that such remarks constitute reversible error. We need not discuss this assignment because there is no reason to believe such will recur on retrial.

Also on another trial, caution should be exercised to see that evidence or inferences of other law violations by appellant be not submitted to the jury.

Reversed and remanded.

All Justices concur.