307 So.2d 557 (1975)
Jeff HARRISON a/k/a Bob Steele
v.
STATE of Mississippi.
No. 48217.
Supreme Court of Mississippi.
February 3, 1975.
*559 Robert M. Acevedo, Biloxi, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before RODGERS, SMITH and SUGG, JJ.
SUGG, Justice:
Jeff Harrison, also known as Bob Steele, was convicted in the Circuit Court of Harrison County for the crime of manslaughter and was sentenced to serve seventeen years in the State Penitentiary.
The evidence for the State reveals that about 7:00 a.m. on September 5, 1973, Julius Taylor found the body of Roy Lee Williams (age 16) lying in some tall weeds near his house on Elmer Street in Biloxi, Mississippi. Taylor reported that approximately two hours earlier, he observed the defendant, Jeff Harrison, pass by in his station wagon several times and then park near the spot where Williams' body was later found. Taylor saw a second individual nearby but did not recognize him or know if the two were together.
Police were called to the scene to investigate and arrived to find a large gathering of spectators, the defendant being one of them. Officer Hamilton, a patrolman for the Biloxi Police Department, knew the defendant was acquainted with the victim, and he asked the defendant when he had last seen Williams. The defendant replied that he last saw Williams on the evening before, but denied having any knowledge of how Williams might have died. Hamilton testified that defendant became a suspect in the case when it was learned in the course of the investigation that he had been seen at the location where the victim's body was found about two hours before the crime was discovered.
Officer Tichell, assisting in the investigation, testified that a confidential informer, who had provided reliable information leading to the solution of previous cases, approached him at the scene and told him that the defendant knew something about the crime and should be checked out. This message was repeated to Tichell several times throughout the course of the investigation that day. Later in the day, Tichell went to the defendant's place of business to talk with him. Tichell testified that the defendant appeared nervous at his inquiries, but denied any involvement in the crime saying that he had not seen Williams since early the preceding evening. He voluntarily surrendered to Tichell a .22 caliber target pistol. From ballistic tests, it was determined this pistol was not the one used in the homicide. During the investigation, Tichell conferred with Officer Hamilton. On the afternoon of September 5, 1973, Officer Tichell filed an affidavit against Harrison, "for investigation for murder," and later went to his place of business and arrested him.
On September 10, 1973, Eddie Graham was picked up in connection with the case. As he was brought into the police station, he passed by the defendant who was sitting in the detective's room. The defendant told Graham to show the officers where the gun was because he had already told the officers everything about Williams' death. Graham then directed police officers to the location where the gun had been hidden and recovered it for them. The gun, introduced into evidence, was identified by both Graham and the police officer who was present when it was recovered.
*560 Graham testified that about 1:00 or 1:30 on the morning of September 5, 1973, the defendant approached him, sought assurances of their friendship, then confessed that he had killed Williams and told him that the body was in the backseat of his station wagon. The defendant told Graham that Williams would not give him any information about a girl in which he was interested and that he shot Williams as he was trying to run out the door. The defendant requested Graham's help in disposing of the body, and Graham told the court that his reluctance to aid the defendant was overcome when Harrison pulled the gun on him. Graham said that, after disposing of the body, the two returned to defendant's apartment where the shooting occurred, and defendant cut the bloodstained carpet off the floor and placed it in a paper bag. They then disposed of the carpet, Williams' shirt, hat and the gun.
According to Graham, the defendant anticipated that he would be a suspect. Graham testified further:
He tol' me if it got hot, he had that ol' cowboy gun he had bought from a dude in a bag and he say if they come, I'm goin' to give 'em the wrong gun 'cause I know they goin' to suspect me.
Graham also said that defendant told him to tell the police that "it" was an accident.
On cross-examination, Graham told the court that he gave two statements on September 11th following his arrest on September 10th regarding the case. In the first statement, he said that he told police the shooting was an accident, but stated that he told the truth about the details of getting rid of the body in that statement. Graham said that he gave a truthful statement of the facts to the police later the same day. The second statement was substantially the same as his testimony in the case. Both statements were introduced by the defendant to impeach the credibility of the witness.
The State offered in evidence the bullet which was recovered from the body of Williams and the .22 caliber Ruger pistol from which the bullet was fired.
The bullet which killed Williams was removed from his body in the course of an autopsy performed by Dr. Annie Nell Bland, a Pathologist. Dr. Bland placed an identifying mark on the bullet, delivered it to an officer who in turn delivered it to William Donald Ates, a Criminalist, who is in charge of the Seriological and Ballistics Section of the Jackson Police Department. Ates is also employed by the State Crime Lab in the same capacity. Ates received the bullet in a sealed vial, placed his identifying mark on it, compared the bullet to one fired from the pistol and the bullet was identified in court by both Ates and Dr. Bland from their identifying marks. It was not necessary to introduce the officer who had the control of the bullet from the time it was removed from the body until it was delivered to Ates and from the time Ates returned it to the officer until it was introduced in evidence because the identifying marks rule out any reasonable inference that one bullet was substituted for another.
The .22 caliber Ruger pistol bearing serial number 255892 was recovered by officers Ray O. Barnes, E.P. Vincent and Lt. Tomastitch. Vincent tied a tag onto the pistol and placed his initials on the tag. The pistol was photographed at the time it was recovered and the photograph was introduced in evidence. Officer Barnes testified that the pistol introduced in evidence was the same as the one recovered by the three officers. He identified it from the tag and from rust spots on the pistol. The rust spots are clearly apparent from the photographs introduced in evidence. The pistol was delivered to Ates by Officer W.A. Payne, ballistic tests performed and the pistol was returned to W.A. Payne. Immediately after the pistol was found it was placed in the possession of Vincent. Neither Payne nor Vincent testified as to the *561 chain of custody. Graham, the witness who disposed of the pistol, also identified it.
The nature in which the chain of custody was shown in court leaves something to be desired; however, we are unable to say that the trial court abused its discretion by permitting the introduction of the pistol in evidence because the positive identification made by Officer Barnes was sufficient to show that the pistol tested by Ates was the one pointed out to the three officers by Eddie Graham, Jr. who had disposed of the pistol for the defendant. It would have been better for the officers to have recorded the serial number of the pistol as soon as it was found as an aid to identification, and, absent this, to have introduced the officers who handled the pistol from the time it was found until its examination by Ates.
The test is whether or not the evidence shows any indication or reasonable inference of possible tampering or substitution. See Grady v. State, 274 So.2d 141 (Miss. 1973) and cases cited therein. We hold that the trial court did not abuse its discretion in permitting the pistol to be introduced in evidence.
Appellant assigns as error the admission into evidence of the pistol and argues that the pistol was the "fruit of the poison tree" because it was recovered as a result of a statement made by Harrison while he was illegally detained and illegally questioned. With respect to the illegal detention claimed by defendant, the evidence shows that the homicide was investigated by several officers who conferred with each other, and they knew from their investigation that a homicide had occurred, that the defendant was seen at the place where the body was found about two hours before the body was discovered with an unidentified person and that a reliable informant told one of the investigating officers that defendant knew something about the crime. These facts constituted probable cause for the officers to arrest the defendant without an affidavit and warrant. Evans v. State, 275 So.2d 83 (Miss. 1973); McCollum v. State, 197 So.2d 252 (Miss. 1967). For a discussion of probable cause for arrest by the United States Supreme Court see Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).
This contention of defendant is not well taken for the additional reason that when a person is illegally detained such person may make a voluntary confession or statement so long as his constitutional rights are preserved. Evans v. State, supra; Bell v. State, 274 So.2d 371 (Miss. 1973); Keith v. State, 197 So.2d 480 (Miss. 1967).
Defendant also contends that the pistol should not have been admitted because it was not shown that he voluntarily, and without knowledge of the possible use of such evidence against him, told Graham to show the officers where the gun was and cites in support thereof Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant's direction to Graham to show the officers where the gun was hidden was brought out on cross-examination of the defendant by his own counsel. No request was made for the court to inquire into the facts surrounding the utterance made by the defendant to Graham. From the record it appears that this was a voluntary statement which was not solicited by any officer. We therefore hold that his rights under Miranda were not violated.
Defendant also contends that the trial court should have excluded the testimony of Eddie Graham because of the prior inconsistent statement which he had given. However, the trial court acted properly in leaving the determination of the weight and worth of Graham's testimony to the jury. Bond v. State, 249 Miss. 352, 162 So.2d 510 (1964).
*562 Defendant voluntarily submitted to a polygraph test and sought to introduce the results in evidence. He contends that it was error for the trial court to refuse admission of such evidence. This was not error, and we reaffirm our holding in Mattox v. State, 240 Miss. 544, 128 So.2d 368 (1961) that neither the taking of a lie detector test nor the result thereof is admissible as evidence. See also, Hawkins v. State, 222 Miss. 753, 77 So.2d 263 (1955). We note that this evidence proffered outside the presence of the jury pertaining to the polygraph test was not favorable to the defendant.
Although the indictment was for the crime of murder, the State sought and was granted an instruction on manslaughter. Appellant argues that this was error because there was no evidence to support a verdict of manslaughter and the jury should have been required to choose between murder and acquittal. This Court has held in Moore v. State, 194 So. 921 (Miss. 1940) (not reported in state reports):
Counsel for appellant argues, as ground for reversal, that the court below erred in granting an instruction for the state, authorizing the jury to convict the defendant of manslaughter, stating that the evidence warranted either a conviction for murder, or else an acquittal on the plea of self-defense.
It is conceded in the brief for the appellant that if the testimony of "the two witnesses for the state was credible, then the defendant was guilty of cold-blooded murder for no reason, so far as the record shows." In this conceded state of the record this Court has steadfastly held that the granting of an instruction for manslaughter in such case is not error, and that a reversal cannot be had on that account. See Calicoat v. State, 131 Miss. 169, 95 So. 318; Bradford v. State, Miss., 161 So. 138, where many cases are cited to this effect. (194 So. at 921-922).
Appellant argues that the verdict of the jury was contrary to the overwhelming weight of the evidence. He testified in his own behalf that he and Williams were present in his apartment and that Williams was killed as a result of the pistol accidentally discharging.
The weight of the evidence was a question for the jury which was resolved against the defendant. We find no error because there was sufficient evidence to support the verdict of the jury.
Defendant also contends that the Weathersby Rule[1] should apply since he was the only person present at the time Williams was shot. The application of the Weathersby Rule has been fully covered in prior decisions of this Court and further discussion of the rule is unnecessary. Suffice it to say that the rule has no application from the facts set forth above.
We therefore hold that this case must be affirmed.
Affirmed.
GILLESPIE, C.J., and PATTERSON, INZER, ROBERTSON, WALKER and BROOM, JJ., concur.
NOTES
[1] Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).