437 So.2d 37 (1983)
Carol E. PENNINGTON
v.
STATE of Mississippi.
No. 53867.
Supreme Court of Mississippi.
August 31, 1983.
*38 Billy J. Jordan, T. Lynn Woolbright, Columbus, for appellant.
Bill Allain, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and ROY NOBLE LEE and BOWLING, JJ.
ROY NOBLE LEE, Justice, for the Court:
Carol E. Pennington was found guilty in the Circuit Court of Lowndes County, Honorable Harvey Buck, presiding, on a charge of capital murder, and was sentenced to life imprisonment in custody of the Mississippi Department of Corrections. She has appealed here and assigns the following errors in the trial below:
(1) The lower court erred in refusing to allow defendant's counsel to offer proof outside the presence of the jury, regarding the excluded fingerprint demonstration and testimony offered by witness, Robert Butler.
(2) The lower court erred in overruling defendant's motion for mistrial based upon innuendo of the State that statements of the State's key witnesses had been verified by Officer Jackie Persons through the administration of polygraph examinations.
(3) The lower court erred in overruling defendant's motion to suppress oral statements made by defendant to police officers John Peavey and Harold Malone.
About 3 a.m. on June 11, 1981, appellant went by the home of Carrie Butler and asked her to go accompany appellant to the Checkmate Lounge. Butler agreed, and they went to the lounge where appellant met and began dancing with one J.D. Walker. About 5 a.m., Butler decided she needed to go home and Walker and appellant left with her. They went to appellant's car, but it failed to start and Walker called a taxicab. The driver took them to their destination, Walker paid the fare of $2.35, and appellant started cursing the taxicab driver, telling him it was a rip-off. She began to wrestle with him over a cigar box in which the taxi driver kept his money. During the altercation, appellant discharged her pistol four times, which resulted in the taxi driver's death.
When the taxi driver failed to answer the taxicab dispatcher, a search was started for him and the police were called. The taxi driver was found slumped over the steering wheel near appellant's apartment. Officers inquired in the area of residents as to whether they had heard or seen anything, and, in the investigation, talked with appellant. At that time, the officers apparently did not realize the taxi driver was dead.
Appellant did not testify, and only one witness, Robert Butler, a former policeman and sheriff's department employee, was called by her. He attempted to demonstrate how easily fingerprints could be taken from a cigar box.

I.
It is first contended by appellant that she was not permitted to make a record of proffered testimony and a demonstration of how easily fingerprints could be lifted from a cigar box. The purpose of *39 this evidence was to show that the police could have removed fingerprints from the cigar box which contained the taxi driver's money, if they had been diligent. Testimony involving this point follows:
Q. Do you have the ability and the expertise to develop a fingerprint from this cigar box?
A. Yes, sir, I do.
MR. MONTGOMERY:
Your Honor, we would object to that question; that's a legal conclusion to be determined by the Court, not this witness.
MR. JORDAN:
Your Honor 
THE COURT:
Sustained.
MR. JORDAN:
Your Honor, we  we would move that out of the presence of the jury to have this done for the Court's benefit.
THE COURT:
Counsel, I don't think there's been any testimony that a print could not be moved from that material. I don't know what you're trying to rebut.
MR. JORDAN:
Your Honor, I think the testimony was that they didn't have the equipment that was necessary to so remove same, and we want to show what a simple process it is.
MR. HOWARD:
Your Honor, we'd object; this box has no relationship to the box that was in the cab; this undoubtedly is a new box that they just produced here; it wasn't furnished during discovery and we would object to the 
THE COURT:
All right, the objection will be sustained.
MR. JORDAN:
And we'd move for a mistrial, Your Honor.
THE COURT:
Overruled.
Appellant argues that under Jones v. State, 306 So.2d 57 (Miss. 1975), Kidd v. State, 258 So.2d 423 (Miss. 1975), and Hitt v. State, 217 Miss. 61, 63 So.2d 665 (1953), the lower court erred in refusing to permit her counsel to make a record of the excluded demonstration and testimony of the witness. The trial judge always should permit attorneys to make a record of objectionable testimony or to make a proffer of same in order tht this Court may know whether it is relevant or material. Although the lower court here did not permit appellant's counsel to make a record and no real proffer was made by dictating into the record what the appellant desired to show by the testimony and by the evidence, appellant's counsel did state that the purpose of the evidence was to show what a simple process it is to remove a latent fingerprint from a cigar box. That officially indicates to this Court what was the purpose of the evidence.
Trial and appellate courts are knowledgeable about the process of removing latent fingerprints from objects. From this record we are able to determine whether or not exclusion of such evidence constituted error. There was direct testimony from the witnesses Butler and Walker that appellant grabbed the cigar box and was trying to wrestle it away from the taxi driver. The appellant does not argue that by failing to remove fingerprints from the cigar box, the State suppressed possible exculpatory evidence in violation of her constitutional rights as was contended in Campbell v. State, 437 So.2d 3 (Miss. 1983). Under the facts here, we are of the opinion that it was not material to demonstrate how fingerprints could have been removed from a different cigar box to determine whether or not they were the appellant's.

II.
The appellant next contends that the lower court erred in overruling her motion for a mistrial because in questioning Officer Jackie Persons, the prosecuting attorney attempted to bolster the testimony of Butler and Walker by referring to a polygraph examination. That testimony follows:

*40 MR. HOWARD:
Q. I believe you testified to extent about your use of the  or training in the use of the polygraph, is that correct?
A. Yes, sir.
Q. And I believe you arrested one defendant in this case, is that right?
A. Yes, sir.
Q. And who was that defendant?
A. Carol Pennington.
Q. And I believe J.D. Walker and Carrie Butler, did you arrest those individuals?
A. No, sir.
Q. Are they witnesses in this case?
A. Yes, sir, they are.
Q. Have they ever been arrested in this case?
A. No, sir.
Q. Did you verify the statements that they gave you concerning this case? (No audible answer)
Q. You can answer. Did you verify the statements that they gave you concerning this case?
A. As much as possible, yes, sir.
MR. JORDAN:
Your Honor, at this time the defense moves for a mistrial based upon the  the innuendo District Attorney's office has placed in this jury's mind. First of all, he brought up the term polygraph, and then he brought up verification, the next question, and the answer was yes, sir. We submit that it is an automatic inference intentionally placed to place in the minds of these jurors that this detective ran these witnesses on a polygraph test, and we submit we're entitled to a mistrial.
THE COURT:
Counsel, you sat there and let him answer and made no objection. Now if you had made an objection I could have ruled on it at that time. You sat right there and let him answer this question without making any objection, and then after he answered you asked for a mistrial.
MR. JORDAN:
Your Honor, I didn't know how he was going to answer.
THE COURT:
Well the motion for a mistrial is overruled.
MR. JORDAN:
We re-new our motion.
MR. HOWARD:
Your Honor, I didn't ask him anything about a  whether he ran these people, I'm sorry 
THE COURT:
Counsel, I've heard all I want to hear about it. I've already ruled on his objection and motion.
MR. HOWARD:
Yes, your Honor, I apologize.
The taking of a polygraph examination and the results thereof are not admissible in evidence. Jordan v. State, 365 So.2d 1198 (Miss. 1978); Harrison v. State, 307 So.2d 557 (Miss. 1975); Mattox v. State, 240 Miss. 544, 128 So.2d 368 (1961). In the case sub judice, there was no objection to the questions at the time they were asked. When the trial judge stated to appellant's attorney that he had not interposed an objection, the attorney responded, "Your Honor, I didn't know how he was going to answer."
An attorney may not refrain from objecting to a question, thinking that the answer might be favorable to him, and, when it is unfavorable, object and ask for a mistrial. Also, the answer of the officer was vague and not direct, and, in our opinion, was not prejudicial to the appellant.

III.
The appellant last contends that the lower court erred in overruling appellant's motion to suppress oral statements made by her to police officers John Peavey and Harold Malone.
The officers checked several houses in the immediate area where the taxicab was discovered to determine whether or not anyone had seen or heard anything which might aid in the investigation. Officers Peavey and Malone went to the house of *41 Carol Pennington, the appellant, and she was asked routine questions such as her name, age and address. She refused to state her age, and told the officers that her address could be seen from the mailbox outside. She was dressed in a nightgown and said she had neither seen nor heard anything with reference to the taxicab.
The appellant was not under arrest or in custodial detention at the time the questions were asked her. The interrogation was clearly a part of an on-the-scene investigation and is excepted from the Miranda rule. Yazzie v. State, 366 So.2d 240 (Miss. 1979); Ford v. State, 226 So.2d 378 (Miss. 1969); Nevels v. State, 216 So.2d 529 (Miss. 1968). There is no merit in this contention.
The judgment of the lower court is affirmed.
AFFIRMED.
AS TO SECTIONS I AND III: PATTERSON, C.J., WALKER and BROOM, P. JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
AS TO SECTION II: PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING and PRATHER, JJ., concur.
ROBERTSON, BOWLING, HAWKINS and DAN M. LEE, JJ., specially concur.
ROBERTSON, Justice, specially concurring:

I.
It is a familiar aphorism that it takes a judge approximately six months after going on the bench to forget completely what it was like to practice law. I have just passed that temporal line of demarcation, and as I look back I already see substantial evidence which would support my conviction of that offense. Section II of today's majority opinion is additional evidence toward the conviction of my colleagues.
To preserve an error for appeal, more and more, the Court is imposing technical requirements the quickest witted lawyer would have difficulty complying with. In Holifield v. State, 431 So.2d 929 (Miss. 1983), for example, we were hypertechnical in our enforcement of the rule that, before an assignment of error predicated upon the giving of a jury instruction could be considered on appeal, objection must have been made in the trial court "stating the particular ground or grounds for such objection". I plead guilty, for I joined in the Holifield opinion. Upon reflection, I think Justices Hawkins, Bowling and Dan M. Lee were closer to the mark when they wrote, "The majority makes a technical and unrealistic demand on trial attorneys as to the adequacy of an objection." 431 So.2d at 931. Even if the technical legal correctness of their position is a matter on which reasonable minds may differ, the Holifield dissenters were indisputably right in fact. A realistic appreciation of those inevitable human frailties of even the most competent trial lawyers faced with the tensions and pressures of trial simply must undergird our rules of practice.
Put in historical context I find what we are doing all the more disturbing. For years our courts were governed by rigid rules of pleading and practice. One false step by the pleader and his client's claim was lost forever. If the proof varied from the cause of action pled, that too could be fatal. We endured such foolishness as the two witness rule, the necessity for waiving answer under oath in chancery, and so much more.
In the past two decades our rules of practice have gradually undergone long overdue corrective surgery. The primary impetus for these reforms has been that ultimately irrepressible imperative of substantial justice, coupled with a realistic recognition of what it is like to practice law. One by one, needless technicalities have been discarded. I had thought we were approaching the point where lawyer and litigant could concentrate on the merits of the case, without having their attention constantly diverted by a procedural mine field. I fear my optimism has been premature.
*42 In a very real sense, this case shows that the cancer has not been uprooted at all. It has simply changed its home. It has come to rest in the appellate process. More and more, appeals to this Court are marked by controversies over the preservation of error, not the justice of the case. Procedural bars are invoked here as demurrers were once filed in the trial courts. We have merely changed the location of the mine field  with the familiar results: Needless consumption of judicial resources hearings and deciding technical procedural questions, harsh substantive results resulting from the bobbles of less than nimble counsel.
In Section II of the majority opinion here we continue apace in our imposition of unrealistic requirements for preservation of error. The majority holds that objection should have been made the first time the word "polygraph" was mentioned. I have no doubt that there are many trial judges in this state who, had an objection been made at that point, would have held that it was premature. Construing the trial colloquy in favor of the majority, it seems to me at most that the state's attorney was laying a predicate for an impermissible question. Even if defense counsel's performance at this point was not textbook perfect, it was certainly adequate to preserve the point for appeal.[1]
The lawyer in the course of trial has a million things on his mind. He may simultaneously be listening to the witness who is testifying, taking notes, fielding a whispered question from his client, weighing possible lines of cross-examination, worrying about his (unsubpoenaed) witness who is late showing up, watching the jurors for their visceral reactions, recalling the testimony of prior witnesses for consistency with what the current witness is saying, considering the witness' prior written statement or deposition  if he is doing his job, there are at least a dozen other thoughts racing through his mind.
In this context, why are we demanding such perfection of the trial lawyer? When counsel opposite hints at an impermissible line of proof, we here require an instantaneous objection. Not only that, we require, again instantaneously, an articulation of each and every ground on which the proposed evidence might not be admissible. Why? We did the same in the Holifield case. We seem on the verge of requiring that when objections are made, the lawyer be as well versed on the point of law as we would expect him to be here  after full opportunity to brief the questions, to review the brief of counsel opposite, and to prepare for argument.
We are demanding that lawyers in a second or two at trial do that which from observed experience we know they frequently fail to do in oral argument before this Court when they have had a year or more to prepare.
What of the situation at trial where  with a million other things on his mind  the lawyer hears an impermissible question asked? He instinctively objects, but for the moment his mind is blank as to the possible basis for the objection. Quite likely the trial judge will be fully aware of one or more grounds on which the objection might be sustained. And surely most trial judges would rule immediately though no grounds be stated. It is his duty to do precisely that.
I fear that by this decision, by Holifield and others we are undermining this salutary practice. We are beginning to lay the groundwork for the case where the trial judge, faced with an inarticulate objection to inadmissible evidence, and even where he knows why the evidence is inadmissible, may nevertheless overrule the objection and not be held in error by this Court on appeal.
*43 A trial is not a chess game. It is a search for justice, or perhaps more modestly, for acceptable dispute resolution. The single dominant trend in judicial reform in the past century has been the elimination of needless formalities and technicalities in trial procedure. Yet our rules on preservation of error have become as hypertechnical, as conducive to mischief and injustice, as were the rules of pleadings of several decades ago.
I have participated in many lawsuits as a trial lawyer. I am confident that the other members of this Court have done likewise, and I know that some members of this Court have tried many more cases than have I. We disserve justice and the bar when we forget what it was like to practice law.

II.
As I read the colloquy set forth in Section II of the Court's opinion, I can see no reversible error, even had a perfect contemporaneous objection been made. Defense counsel reads much more into this colloquy than do I. That someone may or may not have been given a polygraph examination is hardly made apparent, directly or by innuendo, from this colloquy. At most a cautionary instruction to the jury would have been appropriate  although that would merely have served the purpose of highlighting in the jury's mind the idea of a polygraph examination. It is inconceivable to me that what happened at trial, as outlined in Section II of the Court's opinion, should be considered grounds for a mistrial. For this reason, and not because of any failure to make a contemporaneous objection, I would affirm.
BOWLING, HAWKINS and DAN M. LEE, JJ., join in this opinion.
NOTES
[1] Consider the case of the defense counsel in a serious criminal case come jury instruction time. The state offers a particular instruction. Defense counsel objects, stating perhaps inartfully several state law grounds. Suppose two weeks earlier the Supreme Court of the United States has handed down a decision which makes the instruction clearly erroneous  except that defense counsel does not subscribe to U.S. Law Week and doesn't know of the new ruling. Surely we would not refuse to reverse in such a case because defense counsel did not state the proper ground for his objection to the instruction.