IN THE SUPREME COURT OF MISSISSIPPI

NO. 2009-DR-01335-SCT

*JUSTIN UNDERWOOD a/k/a JUSTIN H.*
*UNDERWOOD*

*v.*

*STATE OF MISSISSIPPI*


DATE OF JUDGMENT:                   05/25/1995
TRIAL JUDGE:                        HON. JOHN B. TONEY
COURT FROM WHICH APPEALED:          MADISON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:            JAMES W. CRAIG
                                    MARK D. JICKA
ATTORNEYS FOR APPELLEE:             OFFICE OF THE ATTORNEY GENERAL
                                    BY:  JASON L. DAVIS
                                         MARVIN L. WHITE
NATURE OF THE CASE:                 CIVIL - DEATH PENALTY - POST
                                    CONVICTION
DISPOSITION:                        LEAVE TO SEEK POST CONVICTION
                                    RELIEF DENIED - 05/13/2010
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**EN BANC.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     Justin Underwood was indicted for capital murder in the kidnaping and shooting death

of Virginia Ann Harris.  He was convicted by a Madison County jury and was sentenced to

death at the conclusion of the penalty phase of his bifurcated trial.  This Court affirmed

Underwood's conviction and sentence in *Underwood v. State*, 708 So. 2d 18 (Miss. 1998).

Underwood then sought post-conviction relief pursuant to the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA). Miss. Code Ann. §§ 99-39-1 to 99-39-119 (Rev. 2007 and Supp. 2009). His petition was denied in *Underwood v. State*, 919 So. 2d 931 (Miss. 2005).

¶2. Underwood returns to this Court and has filed a Motion for Relief from Judgment or for Leave to File Successor Petition for Post-Conviction Relief, alleging that the State withheld exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). Because this evidence was not in fact exculpatory or helpful to Underwood and would not have affected the outcome of the trial, his petition for leave to seek post-conviction relief is denied.

I.

¶3. On February 15, 1994, Lindsay Harris returned home from work to find that his wife Virginia was missing. Her body was found the next day in a wooded area approximately a mile and a half from her home. She had been shot four times. Testimony at trial revealed that Underwood's vehicle had been seen near the Harris house on the morning of the crime. Underwood's uncle testified that his .32 caliber handgun had been stolen prior to the murder and that he subsequently had recovered the weapon from Underwood's car. The State's firearms expert testified that the bullets removed from Virginia Harris's body were fired from that weapon. Upon interrogation, Underwood admitted that he had shot Mrs. Harris with the handgun he had stolen from his uncle. He claimed that Mrs. Harris had asked him to kill her because her husband had given her AIDS. The defendant and the State stipulated at trial that

2

Mrs. Harris never had AIDS or HIV. The jury returned a verdict of guilty and determined that Underwood should be put to death.[1] He was sentenced accordingly.

¶4. Underwood now contends that, prior to trial, the prosecution withheld evidence favorable to him. He maintains that the State failed to disclose that it had subjected Lindsay Harris, the victim's husband, to two polygraph tests about the circumstances surrounding the murder. Underwood submits that one of those tests indicated that Mr. Harris was being deceptive. Underwood claims that this evidence was never turned over to the defense in discovery and that he only recently learned that the polygraph tests had been administered to Mr. Harris. Underwood's trial attorney has submitted an affidavit in which he states that, had he known of the results of those tests, he would have cross-examined Mr. Harris more aggressively regarding Mr. Harris's claim that he was at work when the crime occurred. The attorney also avers that he "would have further investigated Lindsay Harris and his potential connection to his wife's death."

II.

¶5. The State had a duty to turn over all exculpatory material to Underwood prior to trial. The United States Supreme Court held in *Brady*, 373 U.S. at 87, that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *See also* **Howard v. State**, 945 So. 2d 326, 337 (Miss. 2006);

_____

[1]A more thorough recitation of the facts is found in the opinion on direct appeal. **Underwood,** 708 So. 2d at 18-25.

3

*Simon v. State*, 857 So. 2d 668, 698 (Miss. 2003). In order to establish a *Brady* violation, the defendant must show:

> (1) that the government possessed evidence favorable to the defendant (including impeachment evidence); (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*Howard*, 945 So. 2d at 337 (quoting *King v. State*, 656 So. 2d 1168, 1174 (Miss. 1995)).

¶6. The State argues that Underwood's present filing is barred as a successive writ under Mississippi Code Section 99-39-27(9), as this is his second petition for post-conviction relief. Underwood maintains that he meets an exception to the procedural bar because Mr. Harris's polygraph tests should be considered newly discovered evidence. The UPCCRA provides, in relevant part:

> [E]xcepted from this prohibition are those cases in which the prisoner can demonstrate . . . that he has evidence, not reasonably discoverable at the time of trial, that is of such nature that it would be practically conclusive that, if it had been introduced at trial, it would have caused a different result in the conviction or sentence.

Miss. Code Ann.§ 99-39-27(9) (Supp. 2009). The State does not claim that the results of the polygraph tests were not discoverable, and the State does not dispute that the existence of the polygraph testing was newly discovered by the defense. However, the State maintains that Underwood is entitled to no relief, and we agree.

¶7. Despite Underwood's claim that Mr. Harris was deceptive while being tested, the results of the polygraph examinations were "inconclusive." The State has produced an

4

affidavit from the investigator who conducted the polygraph examinations for the Mississippi Bureau of Investigation in 1994. In that affidavit, the investigator swears that, "I conducted two polygraph examinations on Lindsay Harris on February 25, 1994, in connection with the investigation of the murder of Mr. Harris' wife Virginia Harris . . . . Both polygraph tests administered to Mr. Harris were inconclusive and did not indicate deception."

¶8.     Underwood's entire claim is that the husband's alleged deception would have provided a basis for further investigation or cross-examination which might have produced a different result at trial. Contrary to Underwood's representation, the polygraph tests did not indicate deception on Harris's part, which completely negates the present claim.

¶9.     Moreover, this Court has repeatedly held that the results of polygraph testing are not admissible in evidence. *Weatherspoon v. State*, 732 So. 2d 158, 161 (Miss. 1999) ("It is well settled that neither the fact of the taking of a polygraph examination nor the results of such an examination are admissible into evidence.") (quoting *Carr v. State*, 655 So. 2d 824, 836 (Miss. 1995)). *See also* *Garrett v. State,* 549 So. 2d 1325, 1330 (Miss. 1989); *Miskelley v. State,* 480 So. 2d 1104, 1108 (Miss. 1985); *Pennington v. State*, 437 So. 2d 37, 40 (Miss. 1983); *Mattox v. State*, 240 Miss. 544, 561, 128 So. 2d 368, 373 (1961). Even if the State had disclosed to the defense all information related to Mr. Harris's polygraph tests, none of that evidence could have reached the jury.

¶10.    In *Wood v. Bartholomew*, 516 U.S. 1, 116 S. Ct. 7, 133 L. Ed. 2d 1 (1995), the United States Supreme Court rejected a very similar argument. Dwayne Bartholomew was convicted of murder in the state of Washington for shooting and killing a laundromat

5

attendant during a robbery. *Id.*, 516 U.S. at 2. Bartholomew claimed that the shooting was an accident, and that his single-action revolver had discharged by accident twice during the robbery. *Id.* at 3. At trial, Bartholomew's brother and his brother's girlfriend testified that Bartholomew admitted intentionally killing the attendant so as not to leave a witness. *Id.* In federal habeas corpus proceedings, the defendant claimed that the State violated *Brady* by failing to disclose prior to trial that polygraph testing of his brother indicated deception. *Id.* at 4-5. The Supreme Court held that the defendant had not been deprived of material evidence under *Brady*, noting that polygraph results were not admissible under Washington law:

> The information at issue here, then – the results of a polygraph examination of one of the witnesses – is not "evidence" at all. Disclosure of the polygraph results, then, could have had no direct effect on the outcome of trial, because respondent could have made no mention of them either during argument or while questioning witnesses.

*Id.* at 6. The Ninth Circuit Court of Appeals had found that, although the polygraph testing was inadmissible, it might have led to additional evidence that might have been useful to the defendant. *Id.* The Supreme Court rejected this reasoning as it was "based on mere speculation." *Id.* Such is the case here.

¶11.    The Supreme Court also noted that Bartholomew's trial counsel acknowledged that the polygraph results would not have affected the scope of his cross-examination. *Id.* at 7. Unlike *Wood*, in the instant case, Underwood's trial counsel swears that if he had known that "Lindsay Harris failed the first examination, [his] trial strategy would have been much different." However, as noted above, Mr. Harris did not "fail" a polygraph examination.

6

Any claim that an "inconclusive" polygraph result could have led to evidence favorable to Underwood is highly speculative; Underwood confessed that he shot the victim, and the murder weapon was found in his car. Therefore, notwithstanding the affidavit from Underwood's trial counsel, we find that the reasoning of the Supreme Court in *Wood* applies. Underwood's claim fails because there is no reasonable likelihood that the outcome of the trial would have been different if Underwood and his counsel had known of the husband's inconclusive polygraph tests.

## CONCLUSION

¶12.    Contrary to Underwood's assertion, the results of the polygraph testing performed on Mr. Harris did not indicate deception, and thus could not have been of any significance to Underwood's defense even in the unlikely event that the inconclusive results could have been admitted into evidence. As there is no reasonable probability that the outcome of the proceedings was affected by the State's failure to disclose the polygraph information, Underwood's present motion is denied.

¶13.    **LEAVE TO SEEK POST-CONVICTION RELIEF DENIED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, RANDOLPH, LAMAR, CHANDLER AND PIERCE JJ., CONCUR.**

7