# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-00888-SCT

*CAMERON TODD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2000 |
| TRIAL JUDGE: | HON. HENRY L. LACKEY |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | JOHN P. FOX |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | JAMES M. HOOD, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/08/2001 |
| MOTION FOR REHEARING FILED: | 11/26/2001; denied 2/7/2002 |
| MANDATE ISSUED: | 2/14/2002 |

**BEFORE PITTMAN, C.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On March 4, 1999, Cameron Todd was indicted in the Chickasaw County Circuit Court on three counts of sexual battery and one count of fondling perpetrated against a female child who was under the age of fourteen at the time of the alleged incidents.[1] The jury was unable to reach a verdict in Todd's first trial. In Todd's second trial, he was convicted and sentenced to twenty years imprisonment with eight years suspended on each of the three sexual battery counts and ten years with eight years suspended on the fondling count. The trial judge denied Todd's post-trial motions. Aggrieved, Todd now appeals, raising the following five issues (which have been edited for clarity):

> **I. THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**
>
> **II. THE TRIAL COURT VIOLATED TODD'S RIGHT TO A FAIR TRIAL WHEN IT REFUSED TO ORDER A NEW TRIAL AFTER THE PROSECUTION WAS REVEALED TO HAVE SUPPRESSED EXCULPATORY EVIDENCE.**
>
> **III. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF UNRELATED ACTS OF ADULTERY WITH ADULTS BY TODD, AND IN REFUSING TO PERMIT IMPEACHMENT OF THE STATE'S CORROBORATING WITNESS TRANCES FORD CONCERNING THE ALLEGED ADULTERY.**
>
> **IV. THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE ADMISSION OF A**

**LETTER PURPORTEDLY WRITTEN BY [E.K.]**[2] **RECANTING HER CHARGES AGAINST TODD.**

**V. THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-1-A, AND REFUSING INSTRUCTION D-8, AS A CONCLUSIVE PRESUMPTION THAT A MINOR UNDER THE AGE OF FOURTEEN IS INSUFFICIENTLY MATURE TO CONSENT TO SEX IS ARBITRARY AND, THUS, UNCONSTITUTIONAL.**

¶2. Concluding that Todd's assignments of error are without merit, we affirm the jury's verdict and the sentence imposed by the circuit court judge.

## FACTS

¶3. In December of 1996, E.K., a minor then 12 years old, moved to Chickasaw County to live with her aunt. Apparently both of her parents were incarcerated on some type of sexual abuse charges involving E. K.

¶4. According to E.K.'s testimony, she had four sexual encounters with Todd, a Houston, Mississippi, police officer. On the first occasion, Todd came to the aunt's home about a week before E.K.'s thirteenth birthday, and Todd fondled E.K. simultaneously while having sex with the aunt and a second woman named Melissa Williams (Williams). E.K. further testified that Todd returned two weeks later and had sexual intercourse with both E.K. and Williams while the aunt watched. On the third occasion, Todd took E.K. to a secluded location where they had sexual intercourse in the back of Todd's patrol car. On the fourth and final occasion, Todd again took E.K. to the same location and again had sexual intercourse with her. On this occasion, Todd told E.K. that she looked like she was 23 years old, and E.K. told him that she was actually only 13 years old. Todd did not respond to this statement, but apparently he did not approach her again.

¶5. On cross-examination, E.K. conceded that Todd also came to the house on many occasions for official police business, such as domestic disturbances and reports of a prowler. E.K. also admitted to having falsely sworn out an affidavit accusing another man of raping her and to having lied to a social worker about sexual encounters with a man in Tupelo and a fictitious 15-year-old boy. E.K. further admitted to having participated in the burning of a neighbor's trailer for which Williams took responsibility. Finally, the defense attempted to introduce a letter purportedly written by E.K. recanting her charges against Todd. However, E.K. denied having written the letter, and the trial court did not admit into evidence..

¶6. E.K.'s testimony was corroborated in part by that of Todd's former partner, Trances Ford. Ford testified that on one occasion he accompanied Todd to E.K.'s home on police business, but that he left Todd alone at the house for about 30 minutes at Todd's direction. Ford also testified, over defense objection, that Todd later said that he had a sexual encounter with both the aunt and Williams while Ford was gone. This liaison seems to coincide with E.K.'s account of the first encounter when she was fondled while Todd had sexual relations with the two adult women. Ford also repeated a later conversation taking place after Todd's indictment in which Todd asked Ford questions about semen testing. On cross-examination, Ford admitted that he himself had been involved in sexual relations with Williams at the aunt's house. Todd did not testify in his own defense.

¶7. The jury found Todd guilty on all counts. During the course of post-trial motions, Todd tried once again

to authenticate the letter purportedly written by E.K., both through the expert testimony of handwriting analyst Lillian Hutchison (who claimed that the letter was certainly written by E.K.) and by challenging the testimony of Tim Hester (who claimed to have faked the letter by tracing other writings of E.K.). Todd also argued that the prosecution improperly failed to turn over exculpatory statements made by Williams to a polygraph examiner in which she denied E.K.'s claims of having had sexual intercourse with Todd in Williams's presence.

¶8. Ultimately, the trial court concluded that since both parties had equal access to Williams, Todd was not prejudiced by the State's failure to turn over the statement to Todd. The court further held that the letter purported to be written by E.K. was not properly authenticated and was therefore inadmissible.

## ANALYSIS

### I. THE VERDICT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶9. Todd's first argument is that the only direct evidence against him, the testimony of E.K. herself, is not credible. Specifically, Todd asserts that because E.K. (1) falsely accused Jimmy Anders of rape, (2) claimed to have had sex with a fictitious 15-year-old boy, (3) claimed to have been 17 years old, and (4) did not admit her involvement in the burning of a neighbor's mobile home, E.K.'s testimony is sufficiently impeached so as to render it insufficient to serve as the sole basis for Todd's conviction. The State responds that, even assuming that E.K.'s credibility was impeached, the weight of the State's evidence was only diminished, but Todd's evidence had no weight at all. Therefore, since Todd himself did not testify to refute E.K.'s testimony, and the three witnesses Todd offered, failed to refute it, the State argues that E.K.'s testimony is sufficient to support the conviction no matter how seriously impeached it is.

¶10. During the trial, Todd called only three witnesses.[3] First was Jimmy Hester, brother of Tim Hester and an acquaintance of E.K., who was offered to authenticate the letter in which E.K. allegedly recanted her charges against Todd. Hester testified, outside the presence of the jury, that he had known E.K. for a little more than 2 years and had received 5 letters from her. He admitted to the trial judge that he had not seen E.K.'s handwriting in over two years. The trial judge, after hearing the testimony and scrutinizing the signatures, sustained the State's objection, and Hester's testimony was not presented to the jury. Next was Thomas Crawford, a former jailer, who E.K. had accused of sexual offenses. Crawford's direct testimony was quite brief, and consisted basically of stating that E.K. had filed false charges against him. On cross-examination, the D.A. asked Crawford: "you don't know a thing in the world about this case [Todd's prosecution], do you?" His reply: "No, sir." On redirect, Crawford testified that the sheriff had "relieved him of his duties" as a jailer, because of accusations by a female inmate that Crawford had sex with her at the jail. There was no testimony which in any way linked E.K. to this other allegation of Crawford's illicit sexual activities. The third witness was Delois Rhodes, a justice court deputy clerk who took an affidavit from E.K. and her aunt alleging that E.K. had been raped by Jimmy Anders. E.K. admitted on direct examination that this affidavit was false, but claimed that she signed it because her aunt had threatened her.

¶11. This Court's standard of review for claims that a conviction is against the overwhelming weight of the evidence is as follows:

> [This Court] must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will

not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction "unconscionable injustice."

*Crawford v. State*, 754 So.2d 1211, 1222 (Miss. 2000)(internal citations omitted). We have also held:

> [T]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where the testimony is not discredited or contradicted by other credible evidence, especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime.

*Cross v. State*, 759 So.2d 354, 356 (Miss. 1999). The credibility of a witness is a question for the jury. *Pleasant v. State*, 701 So.2d 799, 802 (Miss. 1997).

¶12. Todd argues that E.K.'s admission that she had previously lied about other sexual encounters, including the admitted fabrication of rape charges, discredits her testimony and renders it insufficient to be the sole basis for his conviction. We disagree. E.K. freely admitted to her past fabrications, which she claims were the product of coercion by her aunt. Her testimony with regard to Todd appears to be free of her aunt's influence, and Todd offers no testimony or evidence other than the suppressed letter which contradicts E.K.'s account of events. We conclude that proof of past deception on the part of E.K. is not sufficient to render her testimony per se without weight. The jury was fully capable of taking her past deceptions into account in assessing her credibility. Consequently, we conclude that the trial court did not abuse its discretion in denying the motion for a new trial or JNOV.

### II. THE TRIAL COURT VIOLATED TODD'S RIGHT TO A FAIR TRIAL WHEN IT REFUSED TO ORDER A NEW TRIAL AFTER THE PROSECUTION WAS REVEALED TO HAVE SUPPRESSED EXCULPATORY EVIDENCE.

¶13. Todd next argues that the prosecution improperly concealed exculpatory evidence by not informing Todd of Melissa Williams's polygraph exam. However, Todd concedes that the polygraph exam would have been inadmissible. Instead, he argues that had he known that Williams had passed the exam, he could have called her as a witness and been confident that her testimony could have withstood cross-examination, since she could always have just responded to the State with claims of having passed a polygraph test whether it was admissible or not.

¶14. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963), the U.S. Supreme Court established the principle that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." However, the Supreme Court has since held that not all failures to disclose exculpatory evidence constitute reversible error. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L.Ed.2d 490 (1995). Rather, the question is whether there is a "reasonable probability" that the verdict would have been different but for governmental evidentiary suppression which "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 434 (citing *United States v. Bagley*, 473 U.S. 667, 678, 105 S. Ct. 3375, 87 L.Ed.2d 481 (1985)).

¶15. In determining whether a *Brady* violation has occurred, thus mandating a new trial, this Court applies the four-prong test articulated in *King v. State*, 656 So.2d 1168, 1174 (Miss. 1995)(adopting four-prong test from *United States v. Spagnoulo*, 960 F.2d 990, 994 (11th Cir. 1992)). The defendant must prove:

> a.that the State possessed evidence favorable to the defendant (including impeachment evidence);

b.that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence;

c.that the prosecution suppressed the favorable evidence; and

d.that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

*King*, 656 So.2d at 1174.

¶16. The State assumes (for the sake of argument, at least) that the polygraph exam was favorable to Todd, and concedes that it did not disclose this information. However, the State suggests that because the information was not in its exclusive possession and it made no effort to hide it, the information was not suppressed, but was simply not disclosed. Further, the State asserts that Todd never even interviewed Williams (who the State listed as a potential witness) and so did not exercise reasonable diligence. The State also argues that Todd has no basis for his conclusion that the jury would have believed Williams over E.K. since the polygraph would have been inadmissible.

¶17. Todd concedes not interviewing Williams, but argues that his counsel was ethically precluded from doing so outside the presence of her attorney. This argument is disingenuous. Nothing precluded Todd's attorneys from interviewing Williams in the presence of her attorney and possibly learning about the polygraph exam. Since the exam itself was inadmissible, merely learning from Williams that she had passed the exam would have been just as useful to the defense as actually receiving a copy of the results from the State.

¶18. Todd also claims that he and Williams had adverse interests since Williams was a potential witness against him. We disagree. It seems just as likely, if not more so, that Williams would have been inclined to testify on Todd's behalf, since an acquittal in Todd's case might have bolstered Williams's defense in any future criminal proceedings against her. We will never know, because Todd's attorney's apparently did not even try to interview her.

¶19. In any case, *Brady* requires a "reasonable probability" of a different outcome, not a mere possibility. Todd could have called Williams as a witness, but declined to do so presumably because he thought the jury would not believe her testimony. The fact that a wholly inadmissible polygraph test might bolster Williams's credibility does not create a reasonable probability of a different outcome. This issue is without merit.

### III. THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF UNRELATED ACTS OF ADULTERY WITH ADULTS BY TODD, AND IN REFUSING TO PERMIT IMPEACHMENT OF THE STATE'S CORROBORATING WITNESS TRANCES FORD CONCERNING THE ALLEGED ADULTERY.

¶20. At a hearing on pretrial motions, Todd presented a motion in limine to exclude testimony by Trances Ford regarding Todd's admission to intercourse with the aunt and Williams. The trial judge apparently granted that motion, subject to reconsideration on rebuttal, stating:

As to number two about asking the witness Ford about extramarital sex with another adult, if I

understand it correctly, this occurred on the night of the same time that one of the times that Mr. Todd is accused of that; and it's the State's position that this is part of the res gestae for the jury to get the whole picture, but I'm of the opinion that this would be far too prejudicial than in the case in chief.

Now, if Mr. Todd opens the door, if he takes the stand and if he opens the door, then I'll revisit this on rebuttal; but as to the case in chief State will not present any evidence or testimony about any alleged statement by Mr. Todd about any extramarital affair or sex that he had with one Melissa Williams about the time that he's accused of having sex with [E.K.].

¶21. Later, however, during Trances Ford's direct testimony, the following exchanges occurred:

Q. What did he tell you when he told you to leave?

A. He asked me to leave and said he would call me by the radio to come pick him up.

Q. How was he going to call you?

A. By the radio.

. . . .

Q. And did you leave the house?

A. Yes, sir.

Q. Where did you go?

A. Nowhere in particular.

Q. Did you drive around?

A. Yes, sir.

Q. How long was it before you had -- did the defendant call you?

A. Yes, sir.

Q. On the radio.

A. Yes, sir.

Q. And did you go back to the house?

A. Pulled into the front of the residence.

Q. How long was it when, how long was he in the house while you were out riding around?

A. I guess around 30 minutes more or less.

Q. So he stayed in the house for about 30 minutes.

A. I estimate that to be how long it was.

Q. Did he come out when you drove up?

A. He was standing out front when I made it there.

Q. Did he say anything about doing any investigation then?

A. No, sir.

Q. Where did y'all go from there?

A. We drove around a while and ended back up at the police department.

Q. Did Officer Todd tell you what he was doing in that house?

BY MR. WAIDE: Your Honor, if the Court please, I object to this; and he's again violating the motion in limine that the Court ruled on.

BY THE COURT: Overruled. If I did, I didn't understand the question.

BY MR. WAIDE: Sir?

BY THE COURT: I didn't understand the testimony if I did. He may answer.

BY MR. WAIDE: Your Honor, if the Court please, your Honor unequivocally ruled on this; and he's violating the Court's ruling.

BY THE COURT: You may proceed.

BY MR. HOOD: Your Honor, may I develop it outside the jury? I don't want to get close to any of the Court's rulings.

BY THE COURT: I said you may ask the question and he may answer. All right, sir.

Q. Did Cameron Todd tell you what he was doing in that house while you left him there?

A. Yes, sir.

Q. What did he tell you?

A. He, Officer Todd, stated to me he had a sexual encounter. I guess that's the way to put it.

Q. Did he tell you with whom?

A. Missy Williams and E.K.'s aunt.

¶21. Todd argues that this testimony is inadmissible evidence of prior bad acts and should have been excluded under M.R.E. 404(b)**.** Todd further argues that the trial court compounded its error by denying Todd the opportunity to impeach Ford's testimony with what Todd alleges are prior inconsistent statements.

    *a. Rule 404(b) and Ford's testimony.*

¶22. Mississippi Rule of Evidence 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

M.R.E. 404(b).

¶23. In *Neal v. State*, 451 So.2d 743, 759 (Miss. 1984), we said that:

> Proof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences. Such proof of another crime is also admissible where it is necessary to identify the defendant, where it is material to prove motive, and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge.

We went on to say that "evidence of defendant's crimes against Bobby Neal and Melanie Sue Polk were admissible because they were integrally related in time, place and fact with the murder of Amanda Joy." *Id*. We have since limited *Neal*, however, by holding that repeated references to other crimes which were not necessary to prove the State's case may be overly prejudicial and result in reversible error. *Flowers v. State*, 773 So.2d 309, 321 (Miss. 2000)(reversing where State tried defendant separately on each of four murder counts and then repeatedly used evidence of all four killings in same trial). Such prejudice and evidence of prosecutorial overreaching are absent here. The record makes clear that the liaison to which Ford alluded and the alleged fondling activities to which E.K. testified (without objection from Todd) were the exact same transaction. The facts therefore much more closely parallel *Neal* than *Flowers*, and we conclude that the State's legitimate interest in telling a rational and coherent story naturally required the revelation of the adultery with Williams and E.K.'s aunt which was integrally intertwined with the fondling of E.K.

### b. Impeachment of Ford's testimony with Defendant's Exhibit 9.

¶24. Todd next argues that the trial court also erred in not allowing him to impeach Ford's testimony about adultery. According to Ford, Todd told him that he [Todd] had sex with both E.K.'s aunt and Williams. In an effort to impeach Ford, Todd attempted to offer into evidence part of the transcript of Todd's first trial in which the State made a proffer of what Ford's testimony was going to be. According to Todd's interpretation of this transcript, Ford's original testimony was going to be that Todd had sex with E.K.'s aunt and Williams, while Todd only admitted to having sex with one of the women.

¶25. As the lower court noted when Todd first raised this issue at trial, the prosecutor during the first trial clearly stated that he was describing what he "believed" the testimony would be. Todd cites a number of cases for the general proposition that a witness may be impeached with prior inconsistent statements offered either through witnesses who heard the statements or through testimony at prior trials. However, Todd cites absolutely no authority for the proposition that a prosecutor's brief description of what he expects a potential witness's testimony to be is the equivalent of a prior statement of that witness for impeachment

purposes. This issue is without merit.

### IV. THE TRIAL COURT ERRED IN REFUSING TO ALLOW THE ADMISSION OF A LETTER PURPORTEDLY WRITTEN BY E.K. RECANTING HER CHARGES AGAINST TODD.

¶26**.** Mississippi Rule of Evidence 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.**"** M.R.E. 901(a). Todd's interpretation of this rule, apparently, is that if a party can produce *any* evidence that a document is what it purports to be, then the trial court must consider it authenticated. We decline to adopt such an expansive view.

¶27. At a hearing on post-trial motions, Todd offered the following evidence in support of his claim that the letter purportedly written by E.K., recanting her charges against Todd ,was authentic: (1) testimony by Jimmy Hester that he recognized E.K.'s handwriting from having seen it on five letters to him, written two years earlier, (2) testimony by handwriting analyst Lillian Hutchinson that E.K. wrote the letter, and (3) Todd's efforts to impeach prosecution witnesses who denied the letter's authenticity.[4] Balanced against this evidence are the following factual findings upon which the trial court relied in ruling against authentication: (1) E.K. denied having written the letter, (2) Tim Hester admitted to having forged the letter, (3) the person who provided the letter to Todd's counsel indicated that she received the letter from Tim rather than E.K., and (4) an analysis by an examiner with the Mississippi Crime Lab indicating that authorship of the letter could not be conclusively determined. The trial court also found that Lillian Hutchison and Jimmy Hester were not credible witnesses.

¶28. A trial court's application of Rule 901 is reviewed for abuse of discretion. ***Ragin v. State***, 724 So.2d 901, 903 (Miss. 1998). A trial court's ruling on the admissibility of testimony by an expert witness is also reviewed for abuse of discretion. ***Hall v. State***, 611 So.2d 915, 919 (Miss. 1992). On the record before us, we conclude that the trial court did not abuse its discretion in disregarding the testimony of Lillian Hutchison, particularly in light of the trial court's stated concerns about her qualifications and her own admission that she only compared the letter to photocopies of E.K.'s handwriting rather than originals. Nor did the trial court abuse its discretion in disregarding the testimony of Jimmy Hester, who admitted that he had not seen E.K.'s handwriting in two years. Consequently, we have no basis for finding an abuse of discretion regarding the authentication of the letter itself, since the only other evidence supporting its authenticity consisted of vigorous cross-examination of witnesses who otherwise flatly denied the letter's authenticity. This assignment of error is without merit.

### V. THE TRIAL COURT ERRED IN GIVING INSTRUCTION S-1-A, AND REFUSING INSTRUCTION D-8, AS A CONCLUSIVE PRESUMPTION THAT A MINOR UNDER THE AGE OF FOURTEEN IS INSUFFICIENTLY MATURE TO CONSENT TO SEX IS ARBITRARY AND, THUS, UNCONSTITUTIONAL.

¶29. Finally, Todd argues that the trial court erred in not instructing the jury on the "mistake of age" defense. Specifically, Todd challenges the trial court's denial of proposed Jury Instruction D-8, which states:

> The Court instructs the jury that, generally, it is a crime to have sex with a child under fourteen (14) years of age, and it is not necessary for the State to prove that the Defendant knew that the child was under fourteen (14) years of age.

However, the Court further instructs you that it is a defense that the Defendant had a reasonable, good faith belief that the child was over fourteen (14) years of age.

I charge you, therefore, that if you find that Cameron Todd had a reasonable, good faith belief that [E.K.] was over fourteen (14) years of age, and that this belief was reasonable under the circumstances, then, in that event, your verdict must be not guilty, even if you find, beyond a reasonable doubt, that Todd had sexual relations with [E.K.].

¶30. Todd also objects to the granting of Jury Instruction S-1-A, even though it lists the elements of each crime named in the indictment and states that "[i]f the State has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Cameron Todd not guilty [on that count]." Todd's sole basis for challenging Instruction S-1-A is that it "made Todd strictly liable if he had sex with [E.K.], even if she had deceived him by lying about her age, and regardless of the amount of her prior sexual experiences."

¶31. Todd relies exclusively on *Collins v. State*, 691 So.2d 918 (Miss. 1997), which he interprets to leave open the possibility of allowing a "mistake of age" defense where supported by an evidentiary basis. This interpretation, however, is based on dicta assessing the merits of Collins's defense to statutory rape charges and concluding that Collins's claims of a mistake of age were "at best doubtful" given that he had known the victim since her early childhood. *Collins*, 691 So.2d at 924-25. The rest of the opinion, however, unambiguously rejects the "mistake of age" defense, at least in the context of statutory rape. *Id.* at 924 ("At the heart of these statutes is the core concern that children should not be exploited for sexual purposes regardless of their 'consent' . . . . Recognizing the defense of 'mistake of age' would at best frustrate the purpose of both legislative enactments"). *See also Daniels v. State*, 742 So.2d 1140, 1144 (Miss. 1999)(citing *Collins* for the proposition that "neither consent nor 'mistake of age' is a defense to capital or statutory rape").

¶32. In the case sub judice, Todd is charged not with capital or statutory rape, but with fondling and sexual battery. At the time of the alleged incidents, Mississippi's sexual battery statute stated:

A person is guilty of sexual battery if he or she engages in sexual penetration with:

. . . .

A child under the age of fourteen (14) years.

Miss. Code Ann. § 97-3-95 (1993). Likewise, fondling is outlawed by § 97-5-23, which at the time stated:

a. Any person above the age of eighteen (18) years who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, any child under the age of sixteen (16) years, with or without the child's consent . . . shall be guilty of a felony. . . .

Miss. Code Ann. § 97-5-23 (1995).

¶33. While the availability of a "mistake of age" defense to charges of fondling and sexual battery appears to be one of first impression, we conclude that the reasoning should be the same as that employed in *Collins*

and that the plain language of each statute does not provide for any "mistake of age" defense.

¶34. Todd also attacks the constitutionality of denying a "mistake of age" defense. He theorizes that the assumption that all thirteen-year-olds are incapable of consenting to sex is arbitrary and thus violates due process, since the U.S. Supreme Court has struck down laws banning abortions predicated solely on the age of the person seeking the abortion. Specifically, Todd relies on *Bellotti v. Baird*, 443 U.S. 622, 631, 99 S. Ct. 3035, 61 L.Ed.2d 797 (1979), in which the Supreme Court struck down a Massachusetts statute which required parental notification and guaranteed parents a right to intervene when their minor child under the age of 18 sought an abortion. Todd reasons that "[i]f the State cannot conclusively presume that a minor of a certain age is insufficiently mature to decide to take another human life through an abortion, the State cannot conclusively presume that all persons under fourteen (14) are so immature they cannot consent to have sex."

¶35. Todd has utterly misstated the holding of *Bellotti v. Baird*, which also clearly states that "although children are generally protected by the same constitutional guarantees against governmental deprivations as are adults, the State is entitled to adjust its legal system to account for children's vulnerability and their needs for 'concern, . . . sympathy, and . . . paternal attention.' " *Bellotti*, 443 U.S. at 635 (quoting *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S. Ct. 1976, 29 L.Ed.2d 647 (1971). *See also Ginsberg v. New York*, 390 U.S. 629, 88 S. Ct. 1274, 20 L.Ed.2d 195 (1968)(upholding ban on sale of sexually oriented magazines to minors under age of 17 even though ban would violate First Amendment if based upon sale of same material to adults); *Morissette v. United States*, 342 U.S. 246, 251 n.8, 72 S. Ct. 240, 96 L.Ed. 288 (1952)(noting that in statutory rape cases, victim's actual age was determinative regardless of defendant's reasonable belief that victim had reached age of consent). This issue is without merit.

## CONCLUSION

¶36. Because we conclude that the assignments of error set forth by Cameron Todd are without merit, we affirm the judgment of the Chickasaw County Circuit Court.

¶37. **COUNT I: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS WITH EIGHT YEARS SUSPENDED AND TWELVE YEARS TO SERVE, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS WITH EIGHT YEARS SUSPENDED AND TWELVE YEARS TO SERVE, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT III: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY YEARS WITH EIGHT YEARS SUSPENDED AND TWELVE YEARS TO SERVE, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT IV: CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF TEN YEARS WITH EIGHT YEARS SUSPENDED AND TWO YEARS TO SERVE, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. APPELLANT SHALL PAY ALL FINES AND FEES IN ACCORDANCE WITH THE PAYMENT SCHEDULE AS SET OUT BY THE ORDER OF THE CHICKASAW COUNTY CIRCUIT COURT.**

**PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ AND EASLEY, JJ., CONCUR. McRAE,**

**P.J., CONCURS IN RESULT ONLY. CARLSON AND GRAVES, JJ., NOT PARTICIPATING.**

1. Although the victim's aunt was also named in this indictment, she pled guilty and is not a party to this appeal.

2. The victim is identified only by initials.

3. Four other witnesses were called by the defense during the post trial motions for a new trial and for JNOV, but the circuit judge found them unpersuasive and denied the motions.

4. Specifically, Todd tried with some success to get E.K. to admit that only she knew enough details about her life to write the letter. He also makes much of Timmy Hester's inability to repeat his forgery on the spur of the moment in a courtroom with different lighting and writing conditions. Since Hester claimed to have spent at least a week forging the letter, we do not consider this to be as probative as does Todd.