# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-01130-SCT

*PATSY MONTGOMERY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 5/23/2003 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VICTOR ISRAEL FLEITAS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/18/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶ 1.    Patsy Montgomery was indicted, tried, and convicted of embezzlement. She was sentenced to ten years in the custody of the Mississippi Department of Corrections with five years suspended, five to serve with five years' post-release supervision and was assessed court costs of $423.50, a fine of $1,000 and ordered to pay $15,000 in restitution.

¶ 2.    After denial of her post-trial motions, Montgomery appeals and raises the following issues:

I.    Whether the trial court committed reversible error in refusing to allow Mrs. Montgomery to discover relevant and potentially exculpatory documentary evidence.

    A.    Whether the trial court committed reversible error in refusing to order the production of relevant documentary evidence within the control of the State after a specific request in writing by Mrs. Montgomery.

    B.    Whether the trial court committed reversible error in refusing to order the production of potentially exculpatory documentary evidence within the control of the State after a specific request in writing by Mrs. Montgomery.

II.    Whether the trial court committed reversible error in refusing Mrs. Montgomery's proposed Jury Instruction D-6 presenting her good character and theory of the case to the jury.

III.    Whether the trial court committed reversible error in refusing to allow defense witness Larry Montgomery to testify.

IV.    Whether the trial court committed reversible error in allowing the State to amend the indictment to change the ownership of the alleged embezzled property after it had rested.

V.    Whether the trial court committed reversible error in denying Mrs. Montgomery's motion to dismiss the indictment based on the failure of the indictment to charge a felony offense.

VI.    Whether the trial court committed reversible error in denying Mrs. Montgomery's motion for directed verdict and motion for a new trial on the ground that the offense she allegedly committed constituted larceny and not embezzlement.

VII.    Whether the State failed to disclose exculpatory information regarding BancorpSouth Bank's payment to the putative victim.

**FACTS**

¶ 3.    On or about April 1995, Sam G. Patterson (owner of Patterson Engineering & Development, Inc. ["PE"]), hired Montgomery to work for PE.  Her duties included managing the office, keeping the books and serving as the receptionist.

¶ 4.    During the course of this employment, Montgomery appeared to be a dedicated and trustworthy employee.    Therefore, Patterson entrusted her with authority to sign checks on behalf of the business when it became necessary, make deposits and reconcile the monthly bank statements.

¶ 5.    On or about August 2001, Patterson became puzzled over a prolonged cash flow problem and decided to investigate.    During this investigation, he found duplicate checks written to Montgomery over the course of approximately 3 years during this employment (1998 until 2001). He further noticed that PE's bank statements were not being reconciled monthly; therefore, he asked his accountant, Mr. Beachum, to audit his books.    Beachum informed Patterson that Montgomery was embezzling money from PE.    Montgomery wrote duplicate payroll checks to herself, often in the same amount; she further issued a duplicate bonus check to herself; and deposited checks received by PE for work performed into her personal account.    Throughout a 3 year period, Montgomery embezzled money on 13 different incidents, totaling approximately $15,000.

## DISCUSSION

### I. Exculpatory documentary evidence.

¶ 6.    In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion.    *Conley v. State*, 790 So. 2d 773, 782 (¶ 20) (Miss. 2001).

¶ 7.    Montgomery relies on the discovery provision of the Uniform Rules of Circuit and County Court, which provides in pertinent part:
    A. [T]he prosecution must disclose to each defendant or defendant's attorney, and permit the defendant or defendant's attorney to inspect, copy, test, and

photograph upon written request and without the necessity of court order the following which is in the possession, custody, or control of the State, the existence of which is known or by exercise of due diligence may become known to the prosecution:

* * *

5.  Any physical evidence and photographs relevant to the case or which may be offered in evidence; and

6.  Any exculpatory material concerning the defendant.

URCCC 9.04(A)(5), (6).  We have stated:

> ¶ 11. In **Brady v. Maryland**, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963), the United States Supreme Court established the principle that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  In determining whether a **Brady** violation has occurred, and thus a new trial is mandated, this Court applies the four-part **Brady** test adopted in **King v. State**, 656 So. 2d 1168, 1174 (Miss. 1995), under which the defendant must prove:
> *a. that the State possessed evidence favorable to the defendant (including impeachment evidence);*
> *b. that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence;*
> *c. that the prosecution suppressed the favorable evidence*; *and*
> *d. that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.*
> **Id.** at 1174.

**Carr. v. State**, 873 So. 2d 991, 999 (Miss. 2004) (emphasis added).

¶ 8.    This Court has held that "not all failures to disclose exculpatory evidence constitute reversible error."  **Id.** at 999-1000.  "Rather, the question is whether there is a 'reasonable probability' that the verdict would have been different but for governmental evidentiary suppression which 'undermines confidence in the outcome of the trial.'" **Todd v. State**, 806 So. 2d 1086, 1091 (Miss. 2001) (quoting **Kyles v. Whitley**,  514 U.S. 419, 434, 115 S. Ct.

4

1555, 131 L. Ed. 2d 490 (1995)) (some citations omitted). In *Todd*, this Court held that, "[i]n any case, *Brady* requires a 'reasonable probability' of a different outcome, *not a mere possibility*." *Id.* at 1092 (emphasis added); *see King v. State*, 798 So. 2d 1258, 1263 (Miss. 2001). In addition, no *Brady* violation exists where the evidence in question would not raise a reasonable doubt about guilt under the circumstances. *United States v. Agurs*, 427 U.S. 97, 112, 114, 196 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). The State has no duty "'to search out and discover all possible exculpatory evidence.'" *Randle v. State*, 827 So. 2d 705, 712 (Miss. 2002) (quoting *Campbell v. State*, 437 So. 2d 3, 5 (Miss. 1983)).

¶ 9.    Montgomery claims she was entitled to discover three different items:    (1) deposit records for all bank accounts owned or controlled by Sam G. Patterson from September 23-25, 1998; (2) legible bank statements; and (3) billing files from September 1998 through August 2001. The trial judge did not order the State to produce  all these items, but instead stated that "by not requiring [the State] to produce, the State would also be precluded from using anything that's requested in its case in chief, and nothing I (the trial judge) say will preclude you, Mr. Fleitas [Montgomery's attorney], from obtaining these reports by subpoena.  Now, if you're unable to obtain them by subpoena, I at least would entertain a subsequent motion to require them to be produced if they are available to the State or to the putative victim in this case."[1] A hearing was held later on Montgomery's motion to compel, and the trial court denied all aspects of Montgomery's motion.[2]    The trial judge invited Montgomery to subpoena the

[1] Hearing held on November 25, 2002, before the Honorable Richard D. Bowen.

[2] Hearing held on May 16, 2003, before the Honorable Thomas J. Gardner, III.

documents; however, we find that the record is devoid of proof that Montgomery attempted to subpoena the documents.

¶ 10. In the case sub judice, regarding the exculpatory evidence, we find that Montgomery fails to satisfy the first and third prongs of the four-prong **Brady** test. Montgomery alleges and argues that the State suppressed favorable evidence; however, Montgomery fails to show that the evidence was favorable or that the State even possessed the same. Furthermore, there is no proof in the record that would allow this Court to decide whether the evidence allegedly suppressed was favorable or unfavorable.

¶ 11. Even if Montgomery were to satisfy the first and third prongs, she fails to satisfy the second prong under the **Brady** test. Under that prong, it is required of Montgomery to prove "*that [she] does not possess the evidence nor could [she] obtain it [herself] with any reasonable diligence.*" *Carr*, 873 So. 2d at 999 (emphasis added). We have reviewed the record, and there is no evidence that a subpoena was requested, issued, or returned.

¶ 12. In viewing the exhibits provided by the State, there are an abundance of bank statements and deposits covering the exact time period Montgomery claims she wanted. Some of the bank statements produced, according to Montgomery, were illegible; however, the State turned over all that the putative victim had regarding same. The billing files are not relevant to the charge.

¶ 13. Moreover, there is no evidence of suppression by the State. Consequently, this Court finds that the trial judge did not abuse his discretion in refusing to allow Montgomery to discover *potentially* exculpatory documentary evidence, as alleged by Montgomery.

**II. Jury Instruction D-6.**

6

¶ 14. Montgomery argues that the trial court erred in refusing to grant the following instruction, D-6:

> The Court instructs the jury that Patsy Montgomery has introduced what is known as character evidence. That evidence is properly before the jury, not as a reason to acquit Patsy Montgomery if you think she is guilty beyond a reasonable doubt but to be considered along with all the other evidence in the case in determining whether you think she is guilty or not.
>
> Good character is a positive, substantive fact and may of itself be sufficient to generate in your minds reasonable doubt as to the guilt of the defendant so as to require an acquittal, although without it the other evidence would be convincing of guilt.

¶ 15. The trial judge may not sum up or comment on the testimony or charge the jury as to the weight of the evidence. Miss. Code Ann. § 99-17-35 (Rev. 2000). "Instructions on general reputation or character of the accused are said to be both argumentative and a comment upon the weight of the testimony." *Mattox v. State*, 240 Miss. 544, 554, 128 So. 2d 368, 370 (1961)) (citations omitted).

¶ 16. A jury instruction that emphasizes any particular part of the testimony given at trial in a manner as to amount to a comment on the weight of the evidence, is improper. *Manuel v. State*, 667 So. 2d 590, 592 (Miss. 1995). We have stated:

> "Evidence of the good character of the accused should go to the jury as any other fact, and its influence in the determination of a case should be left to the jury, *without any intimation of the court of its value. The court should not tell the jury that satisfactory evidence of the good character of the accused is or is not sufficient to raise a reasonable doubt of his guilt*. The jury is to have the evidence as an aid to estimate the other evidence, and by the light of the whole to reach a verdict."

7

*Anderson v. State*, 97 Miss. 658, 53 So. 393, 393 (1910) (quoting *Coleman v. State*, 59 Miss. 484 (1882)) (emphasis added); *see also* **Lampkin v. State**, 214 Miss. 735, 59 So. 2d 335, 337 (1952).

¶ 17. We find that this instruction would have been an improper comment upon the weight of the testimony. Consequently, the trial court did not err when it refused instruction D-6.

**III. Trial court's refusal to allow defense witness Larry Montgomery to testify.**

¶ 18. In *Houston v. State*, 531 So. 2d 598, 611 (Miss. 1998), this Court discussed Uniform Circuit and County Court Rule 4.06 (superseded in 1995 by URCCC 9.04) regarding discovery violations and stated that, "[t]he Circuit Court has the authority, subject to constitutional limitations, to fix discovery cutoff deadlines and enforce them through appropriate sanctions." Where a defendant violates a discovery obligation, the circuit court may utilize a wide array of sanctions, one of which may include exclusion of the evidence. *Broadhead v. Bonita Lakes Mall, Ltd. Partnership*, 702 So. 2d 92, 104 (Miss. 1997).

¶ 19. According to the record, the only things provided to the State were Montgomery's name, address and telephone number. Montgomery chose not to provide anything else to the State and thus violated the discovery process by not disclosing what Larry Montgomery would testify about at trial. Therefore, consistent with *Houston* and *Broadhead*, we hold that the trial judge did not abuse his discretion, and this argument is without merit.

¶ 20. Additionally, the State raised that no error was committed because what Montgomery sought to offer was cumulative. Montgomery called three witnesses to testify regarding her character for truthfulness. She then called her husband to testify as to the same. This would have been cumulative of the other testimony. Montgomery proffered the excluded testimony,

which would have been limited to her character and propensity for truthfulness.   We have stated:

> ¶ 41. Miss. R. Evid. 403 expressly allows a trial court to exclude evidence which it finds to be cumulative. **Knotts by Knotts v. Hassell**, 659 So. 2d 886, 891 (Miss. 1995); *see also* **Clark v. City of Pascagoula**, 507 So. 2d 70, 76 (Miss. 1987) (holding that trial judge did not abuse his discretion by excluding cumulative evidence). "The touchstone of Rule 403 is whether or not the evidence--of whatever type--is cumulative, and if evidence is in fact cumulative it is within the discretion of the court to exclude said evidence." **Knotts**, 659 So. 2d at 891.

**Broadhead**, 702 So. 2d at 103. *See also* **Flanagin v. State**, 473 So. 2d 482 (Miss. 1985).

¶ 21.    Following the ruling in **Broadhead**, we find that the trial judge did not abuse his discretion in prohibiting the cumulative testimony of Larry Montgomery.    Thus, this issue is without merit.

### IV.  Amendment of Indictment.

¶ 22.    "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this Court." **Nguyen v. State**, 761 So. 2d 873, 874 (Miss. 2000) (citing **Peterson v. State**, 671 So. 2d 647 (Miss. 1996)).  "'It is fundamental that courts may amend indictments only to correct defects of form, however, defects of substance must be corrected by the grand jury.'" **Evans v. State**, 813 So. 2d 724, 728 (Miss. 2002) (quoting **Mitchell v. State**, 739 So. 2d 402, 404 (Miss. Ct. App. 1999)); *see* URCCC 7.09.  We have stated:

> "It is well settled in this [S]tate [. . .] that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case."

9

*Miller v. State*, 740 So. 2d 858, 862 (Miss. 1999) (quoting *Greenlee v. State*, 725 So. 2d 816, 821 (Miss. 1998)) (quotations omitted).

¶ 23. An indictment may only be amended at trial if the amendment is not material to the merits of the case and the defense will not be prejudiced by such amendment. *Griffin v. State*, 584 So. 2d 1274, 1276 (Miss. 1991); *see Mitchell*, 739 So. 2d at 404. The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made. *Griffin*, 584 So. 2d at 1276. Furthermore, it is well settled that an indictment may be amended after the State has rested. *See Burt v. State*, 493 So. 2d 1325, 1328 (Miss. 1986). *See generally Burks v. State*, 770 So. 2d 960, 962-63 (Miss. 2000).

¶ 24. Here, the indictment charging Montgomery alleged that she embezzled property "owned by Sam Patterson d/b/a Patterson Engineering and Development." At the close of the State's case-in-chief, Montgomery moved for a directed verdict because the indictment for a statutory offense was fatally defective because it failed to identify or prove the identity of the person or entity claiming ownership of the embezzled property. The trial court denied the motion and also granted the State's ore tenus motion to amend the indictment to name Patterson Engineering & Development, Inc. as the owner of the embezzled property.

¶ 25. We hold that this amendment is but a matter of form and not of substance. The amendment was not material to the merits of the case, and Montgomery was not prejudiced by such amendment, *i.e.*, Montgomery's defense remained the same.

**V. Alleged failure to charge a felony offense.**

10

¶ 26. Montgomery claims that the court erred in denying her motion to dismiss the indictment based on the failure of the indictment to charge a felony offense. Montgomery relies on the sentencing statute of Miss. Code Ann. § 99-19-17 as a basis for the alleged error. However, the substantive embezzlement statute, Miss. Code Ann. § 97-23-19, stated that the elements of the crime of felony embezzlement was $100 or more. The two statutes seem, although they are not, in conflict.

¶ 27. In *Apprendi v. New Jersey*, 530 U. S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the Supreme Court stated that there is a clear distinction between the elements of a crime which must be submitted to the jury and proved beyond a reasonable doubt and sentencing factors, which are matters that affect the sentence imposed by the Court only and are not elements of the offense. The statute[3] upon which Montgomery relies is a separate sentencing statute; and therefore, the $250 sentencing factor does not apply. *See Bishop v. State*, 755 So. 2d 1269, 1273 (Miss. Ct. App. 2000).

¶ 28. Each of the 13 incidents of embezzlement in the case sub judice involved more than $250; furthermore, there is little doubt that the jury could have found Montgomery guilty of having embezzled less than $250.

¶ 29. The two statutes are clear and distinct, and section 99-19-17 is inapplicable in this situation. Therefore, Montgomery's claim is without merit.

**VI. Embezzlement v. Larceny.**

---

[3] Miss. Code Ann. § 99-19-17.

11

¶ 30. Embezzlement is the wrongful conversion of property lawfully possessed by the person charged. *Medley v. State*, 600 So. 2d 957, 960 (Miss. 1992) (citing *Sisk v. State*, 294 So. 2d 472, 474 (Miss. 1974)).

¶ 31. As previously mentioned, Montgomery was in charge of running the day-to-day operations at PE. Not only was she the office manager, record keeper and receptionist, she was entrusted to write checks on behalf of PE, make deposits for PE and reconcile the bank statements. Montgomery, claiming that she should have been convicted of larceny instead of embezzlement, states in her brief:

> The acts of alleged embezzlement in this prosecution involving additional paychecks, bonus checks, and the deposit into Mrs. Montgomery's bank account, were acts of larceny and not of embezzlement if the prosecution's [sic] theory of the case is to be believed. If Mrs. Montgomery was never authorized to write those checks according to the prosecution, and her taking of them was illegal ab initio then she did not receive them lawfully and convert them to her own use, but instead took the checks with felonious intent at the time of the taking.

¶ 32. This is a classic case of embezzlement, and we are not convinced by Montgomery's attempt to lead this Court off the beaten pathway. Therefore, we find that the trial court did not commit reversible error in denying Montgomery's motion for directed verdict and motion for a new trial on the ground that the offense she allegedly committed constituted larceny and not embezzlement. This allegation is entirely barren of any merit.

### VII. Alleged failure to disclose exculpatory information regarding BancorpSouth Bank's payment to the putative victim.

¶ 33. We hold that this issue is procedurally barred. Montgomery raises this issue for the first time on appeal. "[W]e cannot find that a trial judge committed reversible error on a matter

not brought before him to consider." *Jackson v. State*, 856 So. 2d 412, 415 (Miss. Ct. App. 2003) (quoting *Smith v. State*, 724 So. 2d 280, 313 (Miss. 1998)).

¶ 34. Notwithstanding the procedural bar, this issue lacks merit in fact and in law. Montgomery claims that this evidence would have been exculpatory. However, this evidence would have instead been incriminating by showing that the bank recognized the fact that Montgomery had committed a wrong and the bank did not catch it. In *Gulley v. State*, 779 So. 2d 1140, 1152 (Miss. Ct. App. 2001), Gulley's employer made restitution to the victims for embezzled money taken by Gulley. The Court of Appeals held that "[t]he return of the funds [by the employer] does not negate Gully's actions of illegally commingling and converting the funds for his own use." *Id*. The facts still remain that Montgomery embezzled the money and was convicted of the same by a jury of her peers. We are unable to conclude how such evidence would have been exculpatory. Consequently, this issue is both procedurally barred and without merit.

## CONCLUSION

¶ 35. Finding no merit in Montgomery's assignments of error, we affirm the judgment of the Lee County Circuit Court.

¶ 36. **CONVICTION OF EMBEZZLEMENT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS SUSPENDED, FIVE YEARS TO SERVE WITH FIVE YEARS POST-RELEASE SUPERVISION AND PAYMENT OF A FINE OF $1,000.00, COURT COST OF $423.50 AND RESTITUTION OF $15,000.00, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

13