# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01561-COA

LEON EDWARDS JR. A/K/A LEON EDWARDS                    APPELLANT

v.

STATE OF MISSISSIPPI                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/05/2013 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FIVE YEARS SUSPENDED, AND FIVE YEARS OF PROBATION, AND TO PAY $7,256.07 TO THE CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | AFFIRMED - 12/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ROBERTS AND CARLTON, JJ.**

**LEE, C.J., FOR THE COURT:**

PROCEDURAL HISTORY

¶1.     A jury in the Coahoma County Circuit Court found Leon Edwards Jr. guilty of

manslaughter.  The trial court sentenced Edwards to twenty years, with fifteen years to serve

in the custody of the Mississippi Department of Corrections, followed by five years of probation. Edwards filed post-trial motions, which were denied by the trial court. Edwards now appeals and asserts the following: (1) the trial court erred in not instructing the jury on the castle doctrine, and (2) the State violated his due-process rights by failing to adequately test a firearm, thereby depriving him of the opportunity to present his complete theory of defense.

## FACTS

¶2.    Edwards's wife, Sheila Edwards, was having an affair with Darrin Dickerson.[1] Edwards saw their cars in the parking lot of a hotel in Tunica, Mississippi. Wanting to confront them, he got their room number from the hotel clerk. Edwards knocked on the door to the hotel room adjacent to theirs and asked the occupant to have the hotel clerk call the Coahoma County Sheriff's Department. When the officer came, he identified everyone and asked Sheila to step outside. Sheila refused to talk, so Edwards left the premises.

¶3.    The next day, Edwards went to Dickerson's home. Edwards knocked on Dickerson's neighbor's door, where a man Edwards worked with lived with his girlfriend, and put a gun in their closet. He went home a second time to retrieve another gun to keep inside his vehicle. When Edwards returned to Dickerson's apartment complex, he called a tow truck to remove his wife's vehicle. He was upset that Sheila had let Dickerson drive it. When Sheila heard that a tow truck had arrived and was going to tow her vehicle, she ran outside to stop it. Dickerson followed shortly thereafter.

¶4.    Edwards testified that Dickerson came out of his apartment with both of his hands in

---

[1] Edwards's brief mistakenly refers to the victim as Derrick Dickerson.

his pockets. He testified that he warned Dickerson not to come any closer. When Dickerson would not stop, Edwards went to his vehicle to retrieve his gun. Edwards testified that when he walked back towards Sheila's vehicle, Dickerson made a gesture like he was going to pull something out of his pocket. Edwards proceeded to shoot Dickerson. Dickerson later died from his injuries.

## DISCUSSION

### I. JURY INSTRUCTION[2]

¶5. Edwards argues that the trial court erred by neglecting to instruct the jury on the castle doctrine. He admits, however, that he did not raise this defense at trial. It has long been held that "[i]ssues not brought before the trial court are deemed waived and may not be raised for the first time on appeal." *Tate v. State*, 912 So. 2d 919, 928 (¶27) (Miss. 2005) (citation omitted). Therefore, Edwards is procedurally barred from raising this issue.

### II. DUE PROCESS

¶6. Edwards argues on appeal that the State violated his due-process rights by failing to secure and test Sheila's firearm, thus depriving him of presenting a complete theory of defense.

¶7. "In reviewing rulings of a trial court regarding matters of evidence, relevancy and discovery violations, the standard of review is abuse of discretion." *Montgomery v. State*, 891 So. 2d 179, 182 (¶6) (Miss. 2004) (citations omitted).

---

[2] In his brief, Edwards treats this issue as one of the sufficiency and weight of the evidence and presents an argument based on the lack of a jury instruction. For the purpose of this opinion, we will treat this as a jury-instruction issue.

¶8.    The Mississippi Supreme Court has stated:

> Pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution, "criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984).   Thus, a defendant must "be afforded a meaningful opportunity to present a complete defense." *Id*.  "To safeguard th[e] right [to present a complete defense], the [United States Supreme] Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'   Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system." *Id*.  The State thus has a duty to preserve evidence "that might be expected to play a significant role in the suspect's defense." *Id*. at 488-89.

*Freeman v. State*, 121 So. 3d 888, 895 (¶15) (Miss. 2013) (citations omitted).  "Four years after *Trombetta*, the [United States] Supreme Court clarified [that] duty and held that 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *Hardy v. State*, 137 So. 3d 289, 297 (¶21) (Miss. 2014) (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).

¶9.    Sheila rode with Dickerson in the ambulance to the helicopter pad to be airlifted to the hospital.  Once Dickerson was inside the helicopter, she asked a Pafford Emergency Medical Services employee for Dickerson's cell phone.  When the employee reached into Dickerson's pocket, he pulled out a gun and handed it to Sheila.  The gun belonged to Sheila.  Sheila testified that she tried to put the safety on the gun, but there was a bullet jammed in the chamber.  Prior to being taken to the Clarksdale Police Department to give her statement, she removed the clip and emptied the chamber.  She was questioned that night by Officer Ulyda Johnson.  She did not tell Officer Johnson about the gun.  Six days later, Sheila

4

brought the gun to the police department. She gave it to Officer Johnson, who never sent the gun to the crime lab or had it test fired. Officer Johnson testified that she did not find it necessary to test fire the weapon because too many people had touched the gun before she received it and no spent shell casings of the gun's caliber were found at the scene.

¶10. Edwards contends that the State had a duty to secure the weapon. It is true that law enforcement failed to search Dickerson before he was airlifted to the hospital, but there was no evidence adduced at trial that would suggest that this was done in bad faith. Only one officer was specifically asked whether he searched Dickerson. There was testimony that the scene was chaotic, that there were people standing around screaming and yelling. An off-duty nurse, Jenora Kelly, who was a passenger in the tow truck that had arrived, began assisting Officer Otis Taylor with Dickerson, offering him CPR. Officer Taylor left Dickerson to secure the evidence on the scene, which included Edwards's gun and spent shell casings. All of the other officers who testified were also engaged in securing the scene, whether it was controlling the crowd, roping off the area, or securing Edwards. It cannot be said that they acted in bad faith in such a volatile environment, nor was it suggested.

¶11. Edwards also argues that Officer Johnson had a duty to preserve the gun that Sheila turned in to her and to have it test fired. We cannot say that Officer Johnson acted in bad faith. This gun was admitted into evidence. Officer Johnson testified that the gun, the clip, and the unspent bullet were in substantially the same condition as they were when Sheila brought them to her. Officer Johnson testified that because she was unable to establish the chain of custody and given that there were no spent shell casings of that caliber found at the scene of the shooting, she did not think it was necessary to test fire the gun. Six days had

5

passed before Sheila finally turned the gun over to Officer Johnson. It is also worth noting that a test fire would not have revealed that a bullet was jammed in the chamber because the bullet had been removed by Sheila. Therefore, we find that Edwards was not deprived of presenting a complete defense. The gun was admitted at trial in substantially the same condition as when Officer Johnson received it, and counsel for Edwards was able to elicit testimony from Sheila that a bullet was jammed in the chamber, raising the inference that the gun was fired. The credibility of that testimony was for the jury to decide. For the foregoing reasons, we find that this issue is without merit.

¶12. **THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS, WITH FIFTEEN YEARS TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, FIVE YEARS SUSPENDED, AND FIVE YEARS OF PROBATION, AND TO PAY $7,256.07 TO THE CRIME VICTIMS' COMPENSATION FUND IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.**