# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00664-COA

**DAVID CARROLL SMITH A/K/A DAVID SMITH**                           **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                               **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/2022 |
| TRIAL JUDGE: | HON. KENT E. SMITH |
| COURT FROM WHICH APPEALED: | UNION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KAYLYN HAVRILLA McCLINTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | BENJAMIN F. CREEKMORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/26/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. David Smith appeals his Union County jury conviction of sexual battery of a child under the age of fourteen. The court sentenced Smith to a term of twenty-five years in custody, with ten years suspended and fifteen years to serve, and five years of post-release supervision. On appeal, Smith argues that the trial court (1) abused its discretion when it denied his motion for a continuance in light of the State's alleged discovery violation and (2) erroneously ordered co-defendants' cases to be severed without a properly raised motion by the State. Smith argues (3) the cumulative error in this case warrants reversal. Finding no reversible errors, we affirm the judgment of conviction and sentencing.

**FACTS AND PROCEDURAL HISTORY**

¶2.     Adam[1] was an eleven-year-old boy with developmental disabilities. Although Adam had trouble speaking and shook when he was nervous, he was otherwise able to function at a fourth-grade level. His father, Johnny, was dating Lisa Smith ("Lisa"), and Adam and Johnny lived in Lisa's home with her, her son David Smith ("Smith"), and David's wife and children.

¶3.     Adam would often go with Johnny to visit Chris and Marlee Camp's ("the Camps") farm where Johnny worked as a day-laborer. Adam enjoyed helping out around the farm and working with the animals. The Camps saw Adam as a close family friend.

¶4.     In July 2020, Johnny passed away due to heart complications. Following Johnny's death, Child Protection Services (CPS) took Adam to his grandparents' home. When CPS visited the grandparents' home to investigate a report of bed-bugs, Adam's paternal grandfather appeared, naked, and pulled a gun on the CPS worker. Finding the grandparents' home was unsafe, CPS removed Adam and placed him in foster care. During Johnny's funeral, Chris Camp, who was aware of Adam's situation, offered to take Adam while CPS looked for a permanent placement. CPS placed Adam with the Camps on a temporary basis.[2]

¶5.     While with the Camps, Adam revealed to them that when he lived in Lisa's home before Johnny's death, Smith forced Adam to perform oral sex on him. Adam said that he

---

[1] We use a pseudonym to protect the child's privacy.

[2] The Camps would apply for a foster parent license to adopt Adam. However, he was later placed in a facility to better provide him with psychiatric help.

2

had never told anybody about this incident because Smith threatened to hurt Adam's father if he did. The Camps immediately reported this disclosure to Adam's CPS social worker and then called the assistant principal at Adam's school. Chris also called the Union County Sheriff's Department, and the Department, along with CPS, scheduled a forensic interview for Adam. The Camps took Adam to the forensic interview where Misti Applegate, a forensic interviewer at the Mississippi Child Advocacy Center, spoke with him. During the interview, Adam disclosed to Applegate that Smith had orally and anally penetrated him. Adam described strong sensory details that Applegate would later testify were consistent with those of an abused child. Adam also disclosed during the forensic interview details of sexual abuse he suffered from Lisa as well.

¶6. A Union County grand jury indicted Smith for sexual battery of a child under the age of fourteen.[3] On January 12, 2021, following the indictment, Smith's attorney filed a motion for discovery, requesting to "examine and inspect all alleged evidence, test results, video files, or other evidence which the State holds or controls[.]" This evidence was produced by March 2021. The trial court called the case at the beginning of each subsequent term, and the judge specifically asked if there were any outstanding discovery issues. Smith raised none. Trial was set for May 17, 2022. The trial court set a deadline of May 6, 2022, for the filing of any motions. Smith filed none. On May 10, 2022, Smith's attorney discovered that

---

[3] The same grand jury also indicted Lisa, for touching a child for lustful purposes and child neglect.

3

the State had produced only a summary of Adam's forensic interview instead of the actual video recording of the interview. Furthermore, supplemental CPS records the State had provided in early May mentioned school records regarding the reported abuse. Smith's attorney subpoenaed the school records and told the prosecutor that she never received the forensic interview video.

¶7.     The prosecutor met with Smith's attorney and reviewed some of the forensic interview video with her on May 11, 2022. The next day, the State sent Smith's attorney a disk of the forensic interview, but Smith alleged the disk did not work. Finally, on May 13, 2022, four days before trial, Smith's attorney obtained a working copy of the disk with the forensic interview on it, not from the State, but from Lisa's defense attorney. The interview was one hour and twenty minutes long. After watching the video, Smith's attorney filed a motion requesting a continuance the same day.

¶8.     In his motion for a continuance, Smith argued that he and his attorney had not had enough time to adequately review the forensic interview video. In addition, Smith said he had subpoenaed Adam's school records but had been unsuccessful in obtaining them. Smith further argued that he had only received the State's revised witness list on that day. This witness list included fewer witnesses than the State had previously named.

¶9.     A hearing was held on the motion for a continuance on May 16, 2022, during which the judge asked the State whether the co-defendants' cases had been severed, to which the State responded that it "understood" they were to be severed, but it had not prepared an order

4

for the judge to sign yet. The defense did not object to the statement and did not seek clarification or oppose the severance. The matter of severance was not discussed any further at that hearing or any subsequent hearing, and no written or ore tenus motion to sever was ever filed or made by either party.

¶10. On the matter of the continuance, the State argued that the witnesses on their witness list were still under subpoena, so the defense would not have to issue subpoenas. The State also pointed out that the medical and school records were not going to be presented at trial and alleged that the records just reflected the Camps' report of the abuse to the school, not additional disclosures by Adam. Regarding the forensic interview, the State admitted that while it should have turned over the disk sooner, it was simply an oversight that did not prejudice the defendant because there was nothing exculpatory in the interview. The State also alleged that the disk of the forensic interview they provided to the defense on May 12 had worked for them. The State further argued that it was never put on notice that the video of the forensic interview had not been turned over. The State pointed out that the defendant had been put on notice of the existence of a recording of the full interview because the summary of the interview that the State had provided referenced the recording. Because Smith had notice of the existence of the full recording, the State argued that Smith should have filed a motion to compel rather than waiting until four days before trial to file a motion for continuance.

¶11. In response, Smith argued that the forensic interview summary that was originally

provided to him did not make it clear how mentally handicapped Adam was. But Smith did not clarify why he needed more time to review the recording of the interview based on that realization. Further, when the court asked Smith what he would do differently if granted the continuance, the defense replied as follows:

> THE COURT: I don't know that I'm satisfied based on what I've heard about any particular issues that would be different if the case were continued. And let me ask you this, Ms. Robbins, this is for you. *What actions would be taken or would be different if the case were continued?*
>
> [DEFENSE]: Okay. I mean, I've reviewed the video at this point. That's fine.
>
> THE COURT: Does the video say consistent with – basically consistent but in more detail of what the summary indicates it says?
>
> [DEFENSE]: It does. I was unaware of the extent of the child's intellectual disability until reviewing the video, but that's neither here nor there, really. *Really, the only thing that would be different is I could get those records from the school, from the child's counselor who – that's where he disclosed. And I did not know that until the CPS records were available.*
>
> [THE STATE]: May I clarify something?
>
> THE COURT: Yeah. Let her finish, sure. Anything further?
>
> [DEFENSE]: That's all. I mean, I would like a chance to at least get those records and review those or at least just talk to the counselor, and I can't do that without you court ordering it.
>
> THE COURT: Have you filed a motion to give me an order?
>
> [DEFENSE]: I've got an order here and I would ask that that...
>
> THE COURT: All right. We'll take that up in a second.
> . . . .
>
> [THE STATE]: And I also think she'll need – if that's the case, Your Honor,

6

I think we'll also need to get some things signed by Judge Rogers, the youth court judge.

[DEFENSE]: Probably.

[THE STATE]: Yes.

(Emphasis added). Later, while making his ruling, the trial judge said the following:

THE COURT: Speaking of Judge Rogers, Judge Rogers has just walked into the courthouse[.] Anyway, he'll sign – I'll ask him to sign an order on that disclosure.

The court then denied the motion for a continuance because the court did not believe there was any unfair surprise or prejudice to the defendant. The court also found that since the State had turned over a summary of the interview, the defense had reason to know the full interview had not been turned over. Because of the defense's failure to file a motion to compel production of the video of the forensic interview, the trial court found that the State had no notice that all discovery had not been turned over to the defendant. Following the hearing, the court entered a written order denying the motion for a continuance. The court also signed an order severing Lisa's and Smith's cases that day. However, the severance order was not filed with the clerk until May 18, 2022, the day after the trial began.

¶12. At trial, the State called Applegate as an expert in the field of forensic interviews. The forensic interview footage was admitted and played for the jury. In the video, Applegate asked Adam questions about what he told the Camps. At that point Adam discussed the abuse, including where it took place, when it happened, how it occurred, where he was touched on his body, and who abused him. Throughout the interview, despite his cognitive

7

disabilities, Adam clearly and consistently stated that Smith molested him in the bathroom of the home that he shared with Lisa, Smith, and Smith's wife and children. Applegate stated that Adam's physical demonstration of the abuse, combined with his detailed recollection of sensory details, was consistent with that of an abused child.

¶13. The State also called Adam to testify. Adam said that he had told the truth during his forensic interview, and he identified Smith in the courtroom as the person who abused him. When the defense questioned Adam about whether he remembered telling his CPS social worker that nobody had ever touched him, Adam was unable to recall making any such statement.

¶14. At the close of the State's proof, Smith moved for a directed verdict on the ground that the State had failed to meet its burden of proof. The court denied the motion.

¶15. Lisa testified in Smith's defense. She said that she had sought custody of Adam after his father died, but Adam's grandparents also wanted custody. She stated that she believed Adam did not want to live with her primarily because she restricted his access to the refrigerator because he had been placed on a special diet by the pediatrician. She claimed that Adam's uncle and grandparents had told Adam to claim that he had been sexually abused by Lisa and Smith to prevent them from getting custody. Lisa denied that she had ever seen Smith do anything improper to Adam. She said that Smith never went into the bathroom with Adam and further that Smith was never even alone with Adam.

¶16. Smith's wife Nikki also testified in his defense, claiming that Adam was jealous of

8

Smith's children because they were able to spend more time with Nikki and Smith. Nikki also testified that she had never witnessed any inappropriate behavior between Adam and Smith, although she admitted that Smith had once tied Adam to a chair, seemingly as a joke.

¶17. Smith testified in his own defense, denying that he had ever done anything sexually inappropriate with Adam or any child and proclaiming that he was never even alone with Adam. He stated that Adam's uncle and grandparents threatened him when Lisa attempted to obtain custody of Adam, including an alleged altercation at Johnny's funeral.

¶18. After resting, Smith renewed his motion for a directed verdict on the same ground (that the State had failed to meet its burden of proof), and the court denied it again. After deliberations, the jury returned a verdict of guilty on the charge of sexual battery, and the court sentenced Smith to a term of twenty-five years in custody, with ten years suspended and fifteen years to serve, and five years of post-release supervision. Smith moved for a judgment notwithstanding the verdict (JNOV) or for a new trial, arguing that the State failed to meet its burden of proof, that the denial of the Defendant's motion to continue was an abuse of discretion, and cumulative error resulted. The trial court denied the motion for JNOV or a new trial on May 25, 2022. Smith appealed on May 26, 2022.

¶19. On appeal, Smith argues three issues: (1) the denial of his motion to continue was an abuse of discretion; (2) the trial court erred in severing the co-defendants' cases when no formal written or ore tenus motion to sever had been filed or made by the State and that this amounted to plain error; and (3) cumulative error prejudiced Smith's case by denying him

his Sixth Amendment right to prepare and present a defense and his right to a fair trial.

## STANDARD OF REVIEW

¶20.     We review a trial court's decision regarding the denial of a motion for a continuance using an abuse-of-discretion standard. *Turner v. State*, 292 So. 3d 1006, 1020 (¶37-38) (Miss. Ct. App. 2020) (citing *Montgomery v. State*, 891 So. 2d 179, 182 (¶6) (Miss. 2004)). We also apply the same abuse-of-discretion standard to a trial court's decision regarding discovery violations. *Id*.

¶21.     On the matter of severance, this Court also applies the abuse-of-discretion standard. *Duckworth v. State*, 477 So. 2d 935, 937 (Miss. 1985) (citing *Price v. State*, 336 So. 2d 1311, 1312 (Miss. 1976)).

¶22.     Regarding cumulative errors this Court has held that individual errors may combine with other errors to constitute reversible error where the cumulative effect deprives the defendant of a fundamentally fair trial. *Ross v. State*, 954 So. 2d 968, 1018 (¶138) (Miss. 2007). The "'[r]elevant factors to consider in evaluating a claim of cumulative error include whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged.'" *Ronk v. State*, 267 So. 3d 1239, 1289 (¶215) (Miss. 2019) (quoting *Ross*, 954 So. 2d at 1018 (¶138)).

## DISCUSSION

I.      **Whether the trial court abused its discretion by denying Smith's motion for a continuance.**

¶23.     Smith argues that the State's failure to timely provide him with the video of Adam's

forensic interview violated Smith's fundamental rights because the late disclosure hindered his ability to properly prepare and present a defense. Therefore, Smith contends, the trial court erred by denying his motion to continue. He further argues that the motion to continue should have been granted because he needed additional time to subpoena the witnesses the State no longer intended to call, as well as time to secure school records regarding the Camps' report of abuse due to the State's late disclosure of the supplemental CPS records.

### A. *Forensic Interview*

¶24. Rule 17.2 of the Mississippi Rules of Criminal Procedure states:

> [T]he prosecution must disclose to each defendant or to the defendant's attorney, and permit the defendant or defendant's attorney to inspect, copy, test, and photograph upon written request and without the necessity of court order, the following which is in the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecution:
> . . . .
>
> (5)   Any physical evidence, photographs, and data or information that exists in electronic or magnetic form relevant to the case or which may be offered in evidence[.]

Further, Rule 17.9 of the Mississippi Rules of Criminal Procedure provides:

> If, at any time prior to trial, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, or enter such other order as it deems just under the circumstances.

Based on these rules, it is clear that upon request by the defense, the State is required to produce any electronic recordings that may be offered into evidence. *White v. State*, 223 So.

3d 859, 867 (¶29) (Miss. Ct. App. 2017) (finding discovery violation by failing to disclose recordings of phone calls made by the defendants in the State's possession). The failure to disclose the recording may be sufficient grounds for a continuance. *Id.*; *see also Schlegel v. State*, 303 So. 3d 30, 41 (¶34) (Miss. Ct. App. 2020).[4]

¶25. A trial court has wide latitude in deciding whether a continuance should be granted. *Manyfield v. State*, 296 So. 3d 240, 249 (¶30) (Miss. Ct. App. 2020). The key question is whether, under the unique facts of a case, the trial court allowed the defendant a reasonable opportunity to prepare to confront the State's evidence at trial. *Id* (citing *Patterson v. State*, 93 So. 3d 43, 46 (¶10) (Miss. Ct. App. 2011)). If the defendant was not given a reasonable opportunity to prepare his defense because of the State's discovery violation, the court should grant a continuance in order to provide enough time to properly prepare a defense. *Manyfield*, 296 So. 3d at 249 (¶30). Failure to do so may amount to an abuse of discretion. *Id*.

¶26. In *Cox v. State*, 849 So. 2d 1257, 1269 (¶38) (Miss. 2003), the Mississippi Supreme Court held that the court does not abuse its discretion in refusing to grant a continuance if the defendant still had time to call his witnesses; no "manifest injustice" resulted from the discovery violation. In that case, Cox was charged with the murder of David Rowland, who

---

[4] In *Schlegel*, we cited *Morris v. State*, 927 So. 2d 744, 747 (¶8) (Miss. 2006), where the Supreme Court applied and discussed Mississippi Uniform Rule of Circuit and County Court Practice 9.04 on discovery violations. While these rules have been replaced by Mississippi Rule of Criminal Procedure 17.9, *Schlegel* applies the same analysis as used in *Morris* regarding continuances for discovery violations.

Cox alleged had slept with his wife. *Id.* at 1261-62 (¶¶3-5). Prior to trial, Cox filed a motion for a continuance for the defense to investigate "late-breaking information." *Id*. at 1267-68 (¶¶32-33). This "late-breaking information" regarded a witness, Judy Fillyaw, who had thought a friend of hers, Dave Nelson, had been killed. *Id.* Fillyaw suspected Jerry Porter because Dave Nelson was sleeping with Jerry's wife, Teresa Porter. *Id*. However, when police discovered that Fillyaw was referencing a different David entirely, and that Dave Nelson was in fact alive, they ended their investigation into Jerry Porter. *Id*. When this information was revealed to the defense, just prior to trial, Cox argued that the State's failure to inform him of this "late-breaking information" amounted to a discovery violation, and that this new information justified a continuance in order to develop these new facts. *Id*. The trial court denied the continuance based on the fact that the State informed Cox as soon as it dismissed the investigation into Jerry Porter. *Id*. The court also found that Cox would not be prejudiced because he would still be able to call witnesses based on that dismissed investigation. *Id*. Cox did, in fact, call Teresa Porter, Jerry Porter's wife, as a witness at trial. *Id*. at 1268 (¶34).

¶27. Cox appealed, arguing that the trial court abused its discretion in denying the continuance when there was a discovery violation. *Id*. at 1262 (¶5). The Mississippi Supreme Court stated that, in order for it to reverse, Cox must show "manifest injustice" based on the denial of the continuance. *Id*. at 1268 (¶32). The Supreme Court held that Cox did not suffer any manifest injustice because he was still able to call Fillyaw as a witness at

13

his trial, and the other witness, Teresa Porter, did actually testify for the defense. *Id*. at (¶34). The supreme court affirmed the trial court's denial of Cox's continuance motion, despite the discovery violation, because it did not lead to any "manifest injustice." *Id*.

¶28. The failure of the State in the present case is similar to the State's failure to provide discovery in *Cox*. Smith did properly request the forensic interview and any other relevant evidence that the State intended to use at trial. However, the State failed to turn over the forensic interview recording. Instead, the State only produced a summary of the recording. Seven days before trial, Smith noticed that the State had not produced the full recording, and he requested it. Despite attempts to obtain the full interview from the State, Smith did not obtain a copy of the disk until four days before trial from co-defendant Lisa Smith's defense attorney. Based on this perceived discovery violation by the State, Smith filed a motion for a continuance.

¶29. At the hearing on Smith's continuance motion, the trial court questioned whether the State had provided a summary of the forensic interview with the general discovery materials. The State responded that it had delivered a summary of the forensic interview, which included a reference to the full forensic interview, and that the summary provided all the important details of the interview, such as Adam's recount of the abuse. Smith responded that the written summary of the interview did not capture the degree of Adam's mental disability reflected in the video. However, Smith failed to elaborate as to how this fact affected the preparation of the defense.

¶30.    The trial court expressed its concern regarding the failure of the State to turn over the forensic interview recording. But the trial court also stated that the issue of the discovery not being delivered to the defense "cut both ways" because the defense had been put on notice of the existence of the full interview and had not filed a motion to compel. Based on this finding, the trial court then asked the defense what benefit a continuance would provide in preparing a defense. Smith's counsel said that she was "fine" regarding the State's failure to provide the forensic interview but that she had been unaware of the degree of the victim's mental disability. However, Smith's counsel commented that the victim's disability was "neither here nor there[,]" implying that it was not significant. Counsel never provided any other reasons as to why the victim's degree of disability was relevant or what further investigation she needed to do. Instead, at this point, Smith based the continuance motion on his need to subpoena the school records as evidenced by his counsel's comment that "[t]he only thing that would be different is I could get those records from the school[.]"

¶31.    Although the State technically violated discovery rules by providing the videotape of the forensic interview just one week before trial,[5] the defense counsel's comments at the hearing indicated that the State's late production of the recording of the forensic interview did not hinder the preparation of Smith's defense. Therefore, we find that the trial court did not abuse its discretion by denying Smith's motion for a continuance because there was no "manifest injustice" in not giving the defense more time to prepare based on this "new"

---

[5] *White*, 223 So. 3d at 867 (¶29); MRCrP 17.2.

evidence. *Cox*, 849 So. 2d at 1268 (¶34); *see also Flaggs v. State*, 999 So. 2d 393, 399 (¶18) (Miss. Ct. App. 2008) (finding that a defendant who was put on notice that the State had evidence that the defense may have found relevant but nonetheless waited until the day before trial to make a request was not entitled to a continuance).

### B.   CPS Records

¶32.   Smith also argues that he was entitled to a continuance to obtain Adam's school records. Smith contends that supplemental CPS records that he received from the State seven days prior to trial mentioned a report of abuse to the school.[6] Smith's counsel told the court that she had subpoenaed the records but had not been successful in securing them yet. She requested the trial court to grant the continuance and enter an order granting her access to the records. On appeal, Smith argues that the trial court abused its discretion in denying the continuance. However, because the trial court requested the youth court judge sign the order granting Smith access to the school records prior to trial, we find no error by the trial court in denying Smith's continuance motion and thus remedying the issue pursuant to Rule 17.9.

¶33.   As the supreme court held in *Cox*, we will not find an abuse of discretion in denying a motion for a continuance where there was no "manifest injustice" resulting from the discovery violation. *Cox*, 849 So. 2d at 1269 (¶38). During the hearing on Smith's motion for a continuance, the State and Smith disagreed about the potential content of the school

---

[6] Nothing in the record indicates when CPS gave the State these supplemental records, so there is insufficient evidence to determine whether the State violated any discovery rules by providing Smith these records when it did.

records, particularly regarding to whom Adam first disclosed the abuse (the Camps or the school). After some back and forth between the prosecutor and defense counsel, the trial judge asked Smith, "What actions would be taken or would be different if the case were continued?" Smith's counsel responded:

> [DEFENSE]: . . . I mean, I would like a chance to at least get those records and review those or at least just talk to the counselor, and I can't do that without you court ordering it.
>
> THE COURT: Have you filed a motion to give me an order?
>
> [DEFENSE]: I've got an order here and I would ask that . . .
>
> THE COURT: All right. We'll take that up in a second.

Later, the trial court noted that the youth court judge had entered the courtroom, and the circuit court judge said he would ask the youth court judge to sign the order for the disclosure of the school records. Therefore, the trial court remedied Smith's need to secure the school records by requesting the youth court judge sign the order. Indeed, Rule 17.9(a) makes room for these types of remedies, including granting a continuance or entering such other orders as deemed just under the circumstances.

¶34. The record is silent as to whether Smith obtained the school records. However, at the beginning of trial, Smith did not renew his motion for a continuance based on being unable to obtain the records, and in his motion for a new trial, Smith did not mention that he was unable to obtain the records. Because Smith made no further complaint regarding the school records, we assume the issue had been resolved. Now on appeal, Smith still fails to point out

17

how the denial of the continuance to review the school records prejudiced his defense. Although Smith argues that "[t]he prejudice this caused Mr. Smith cannot be understated, as his state and federal constitutional and fundamental rights to confrontation, to present a defense, and to a fair trial were affected[,]" he fails to specifically state how his rights were affected. Smith merely relies on the conclusory statement that his rights were somehow violated. This is not enough to prove prejudice. *Manyfield*, 296 So. 3d at 250 (¶32) (requiring defense to show concrete facts that demonstrate the particular prejudice to the defense).

¶35. Accordingly, any delay in Smith's obtaining Adam's school records due to the late production of the supplemental CPS records was remedied by the trial court's requesting that the youth court judge sign the order issuing the subpoenas for the school records. As such, Smith was not entitled to a continuance because he points to no prejudice resulting from the State's alleged discovery violation that was not remedied by the trial court's requesting that the youth court judge sign the subpoenas for the school records.

> C. *Witnesses*

¶36. Lastly, turning to the witnesses that the State no longer intended to call, the State asserted that the witnesses on its original list were still under subpoena and would be available to be called by the defense on the day of the trial. Because Smith can point to no witnesses he would have called who were not available due to the State changing its witness list, this issue is without merit. *Manyfield*, 269 So. 3d at 250 (¶32).

18

¶37. Based on Smith's failure to point to any "manifest injustice" suffered by him due to the State's discovery violation and the trial court's denial of the motion to continue, we find no abuse of discretion by the trial court.

**II.** **Whether the trial court abused its discretion by severing the co-defendants' cases without a properly raised motion.**

¶38. Smith argues that the court improperly and untimely severed his case from his co-defendant Lisa's case.

¶39. At the continuance hearing, the trial judge asked:

THE COURT: Has the case been severed?

STATE: My understanding is that we are, but I don't believe that anything has been reduced to an order for Your Honor's signature.

The defendant did not object nor seek any clarification regarding this exchange. Further, in Smith's motion for judgment notwithstanding the verdict or a new trial, Smith did not raise this issue. Thus, he is procedurally barred from raising it on appeal. *Hollingsworth v. State*, 269 So. 3d 456, 458 (¶7) (Miss. Ct. App. 2018). Smith admits as much, but he argues that this Court should undertake a plain error analysis of this issue. *Id*. at 458-59 (¶¶7-8) (The plain error doctrine allows consideration of obvious error that was not properly raised by the defendant and affects a fundamental, substantive right.); *accord United States v. Crumley*, 528 F.3d 1053, 1062 (8th Cir. 2008) (A defendant failed to raise the issue of severance to the trial court, and the appellate court applied a plain error standard of review rather than an abuse-of-discretion standard.).

19

¶40. In reviewing whether a trial court's severance amounts to plain error, we first determine whether or not the trial court violated a known legal rule that results in an "obvious error." *Johnson v. State*, 155 So. 3d 733, 738 (¶8) (Miss. 2014); *Hollingsworth*, 269 So. 3d at 459 (¶9). Second, we determine if the error resulted in "a manifest miscarriage of justice" or "seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *Hollingsworth*, 269 So. 3d at 459 (¶8) (quoting *Johnson*, 155 So. 3d at 738-39 (¶8)).

¶41. In this case, we need not determine whether the trial court violated a known legal rule because Smith fails to establish any "manifest miscarriage of justice," as he does not identify any harm he suffered due to the court's severance of the co-defendants' cases. Further, Smith called Lisa to testify on his behalf. Smith does not explain how any facet of Lisa's testimony would have been different had the court not severed the cases. Indeed, had the court not severed Lisa's and Smith's cases, they would have been tried together, and she may very well have chosen not to testify on Smith's behalf, as the same jury determining Smith's guilt would have also been determining her guilt. This failure to sever Lisa's case could very likely have robbed Smith of one of his own defense witnesses. Because Smith fails to point to any actual prejudice to the outcome of the trial suffered due to the court's severance of the co-defendants' cases, we find no plain error.

### III. Whether there was cumulative error.

¶42. Lastly, we turn to the alleged cumulative error that Smith raises as his third issue.

Under the cumulative error doctrine, "one error, standing alone, may not warrant reversal, [but] reversal may be required if the errors, taken together, create such an atmosphere of bias, passion, and prejudice that they effectively deny the defendant a fundamentally fair trial." *Dickerson v. State*, 175 So. 3d 8, 35 (¶86) (Miss. 2015) (internal quotation mark omitted). However, in cases where no error can be found, there can be no cumulative error. *Thomas v. State*, 239 So. 3d 331, 350 (¶66) (Miss. 2018). Accordingly, Smith's argument regarding cumulative error is without merit because we find no individual errors.

## CONCLUSION

¶43. Based on the foregoing, the trial court did not abuse its discretion by denying Smith's motion for a continuance. Further, no plain error occurred due to the trial court's severing of the co-defendants' cases because Smith could point to no actual prejudice. Because no error was found regarding either of the first two issues, there can be no cumulative error. Accordingly, we affirm the jury's verdict and the trial court's sentence.

¶44. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**